D. L. MULFORD

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa November 24, 1891.*

1.  EMBEZZLEMENT—*deposit of money by employe with employer—relation between them.*  An agent employed to attend to sales of a patent coffee-pot, deposited with his employer $50 as security for his performance of the duties of his employment for one month, there being no intention that the deposit should be kept separate from the other funds of the employer.  Before the time of the service had expired the employe demanded a return of the money so deposited, which was refused until another person could be found to take his place :  *Held,* that the deposit created between the parties merely the relation of debtor and creditor, and not that of bailor or bailee, and that the subsequent refusal of the employer to repay the money deposited, on demand, could not constitute embezzlement or larceny.  It could be nothing more than a failure to pay a debt.

2.  DEPOSIT OF MONEY WITH EMPLOYER AS SECURITY—*rights of employer.*  If a party deposits money with his employer as security for his faithful discharge of the duties of his employment, he will not be entitled to have the same returned to him before he completes the term of his service.  The employer may retain the same as security for any loss or damages he may sustain by the failure of the depositor to perform his entire contract.

WRIT OF ERROR to the Criminal Court of Cook county ; the Hon. HENRY M. SHEPARD, Judge presiding.

Mr. N. H. HANCHETT, for the plaintiff in error.

Mr. J. M. LONGENECKER, State's Attorney, and Mr. C. C. NEELEY, Assistant State's Attorney, for the People.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

On the 30th day of October, 1890, an indictment was presented in the Criminal Court of Cook county by the grand jury, against D. L. Mulford, containing six counts. The first and second counts, which are substantially identical, allege, in substance, that, on the 1st day of October, 1890, in said county, the defendant, being an agent, to-wit, a custodian in the employ of Hiram F. Swigart, did fraudulently and feloniously and without the consent of said Swigart, embezzle and convert to his own use a large amount of personal goods, funds, money and property, to-wit, certain United States treasury notes, bank bills, and gold and silver coin particularly described, the personal goods, funds, money and property of said Swigart, which said personal goods, funds, money and property came to the possession of the defendant by virtue of such employment, whereby and by force of the statute, etc., the defendant is deemed to have committed the crime of larceny, and so the grand jurors upon their oaths say, that the defendant, then and there in manner and form aforesaid, the said personal goods, funds, money and property of said Swigart, then and there being found, did then and there feloniously take, steal and carry away, contrary to the statute, etc.

The third count alleges that the defendant, at the time and place aforesaid, fraudulently and feloniously did embezzle and convert to his own use a large amount of personal goods, funds, money and property, (describing the same as in the former counts), the personal goods, funds, money and property of said Swigart, which said personal goods, etc., then and there were delivered to him, the said defendant, whereby and by force of the statute, etc., the said defendant is deemed to have

committed the crime of larceny, and then follows a formal charge of larceny as in the former counts.

The fourth count alleges that the defendant, at the time and place aforesaid, the said personal goods, etc., (describing them as in the other counts), the personal goods, etc., of said Swigart, then and there found entrusted to the defendant by said Swigart, the defendant did then and there fraudulently and feloniously convert to his, the defendant's own use, with intent feloniously to take, steal and carry away the same, whereby and by force of the statute, etc., he is deemed to have committed the crime of larceny, and then follows a charge of larceny.

The fifth count is an ordinary count for larceny charging the defendant with stealing, taking and carrying away the same goods and property described in the other counts, the personal goods, etc., of said Swigart, and the sixth count is an ordinary count for receiving stolen goods, charging the defendant with receiving, feloniously, unlawfully and for his own gain, the same goods described in the former counts, knowing them to have been stolen.

At the January term, 1891, of said court, the defendant was tried upon said indictment, and at such trial the jury found him "guilty of embezzlement as charged in the indictment," and found the value of the property embezzled to be $50, and fixed his punishment at imprisonment in the penitentiary for one year. A motion by the defendant for a new trial, also a motion for a *venire de novo*, and a motion in arrest of judgment, were made and successively overruled, and sentence was thereupon imposed upon the defendant in accordance with the verdict. The defendant now brings the record to this court by writ of error.

There is very little conflict in the evidence, the principal witnesses being the prosecuting witness and the defendant. The facts appearing from the evidence are as follows: Shortly

prior to August 22, 1890, the defendant, being engaged in the business of selling a patent coffee-pot by means of agents located at different points, and being desirous of engaging an agent to take charge of said business at the Commercial Hotel, Chicago, advertised for a responsible man to take charge of a business. On the 22d day of August, 1890, Swigart, the prosecuting witness, called on the defendant and applied for the situation. At that interview the defendant offered as wages $10 per week and a commission of ten per cent. on the sales made, but at the same time told Swigart that he should require good references or security. Swigart said that he could not give references but could give security, and after a few minutes' conversation he went away, the defendant requesting him to call again. On the following Monday, which was August 25, he called again and said he would like the place, and an agreement was then made by which Swigart was to take charge of said business for the defendant on the terms above mentioned, the defendant requiring of Swigart a deposit of $50 as security for the goods entrusted to him and for a proper accounting for sales made, and Swigart depositing with the defendant that sum of money. Swigart in his testimony says nothing as to the term of his employment, but the defendant testifies that he told Swigart that he did not want him unless he would remain a full month and Swigart agreed so to do, and that the $50 was deposited as security for the discharge of his duties for that period. The defendant's testimony that the employment was for the term of one month is not contradicted by any witness, and is corroborated by the testimony of Emma Noel, the defendant's cashier who was present when the contract was made and who testified to the same facts. The $50 was handed by Swigart to the defendant's cashier and she, in Swigart's presence, put it in the defendant's cash drawer and gave Swigart the following receipt:

"$50.00.                              Chicago, *Aug. 25, 1890.*

"Received of Hiram F. Swigart of 776, W. 22nd St. $50.00, to be held as security for the faithful discharge of his duties, and accounting of sales made by him, he to receive the sum of $10.00 per week, and ten per cent. on sales made by him.

D. L. Mulford."

Immediately after said deposit was made, the defendant sent a man with Swigart to the Commercial Hotel to set him to work, and Swigart, after remaining about two hours came back to the defendant and asked a return of his deposit, saying that his father had just written him that he was going to buy some real estate, and wanted to borrow of him all the money he could spare. The defendant then told him that he could have his money back, but that if he withdrew his deposit, he must give up his job. Swigart replied that he wanted his money but did not wish to give up his job, and concluded to think the matter over. The next day he called upon the defendant and substantially the same conversation again took place, the defendant also saying that he then had another young man ready to take the position if Swigart persisted in demanding his money back. Swigart replied that he did not wish to quit work as he had nothing else to do, and that he had concluded to let the money remain.

A day or two later the defendant sent Swigart a note saying that he was called out of town for a day or two, but would arrange matters with Swigart as soon as he returned. On the following Saturday an agent of the defendant settled with Swigart, paying him the amount of his wages for the week, less the money in his hands derived from sales. The next Saturday the defendant, as he testifies, put Swigart's wages in his pocket with the intention of going down and settling with him, but finding that it was too late and feeling sick, he did not go. On Thursday of the third week, Swigart called on the defendant in company with a man by the name of Munn and told the

defendant he wanted to give up his situation, as he wished to leave the city. The defendant then insisted that Swigart's agreement was to work for him for a month, and said he expected him to fulfil his contract, and that defendant would not return his deposit until he did so. Swigart said he could do better by leaving the city, and defendant finally agreed, as an accommodation to Swigart, to advertise for another man to take the place, Swigart to resume his work until another man could be procured. Swigart asked how long it would take to get another man, and defendant replied that in all probability he could get one that week. At this interview the defendant and Swigart had an accounting, and it was found that the defendant was owing Swigart $13 for wages, which with the $50 deposit made $63.

Swigart went back to his work, and the next day, which was Friday, he called again in company with said Munn. What occurred at that interview is stated somewhat differently by the witnesses. Swigart testifies: "Called again next day with my friend Mr. Munn. Found Mr. Mulford. Said he had a man to take my place, but refused to return my deposit, saying that my time would not be up until other party came to take my place, but he would write party to come next day, Saturday, morning. I refused to go back to the Commercial Hotel to work. Mulford told me to call again on Saturday, and he might hear from party to whom he had written, and then he would settle with me." Munn testifies: "We called again on the next day. Saw Mr. Mulford. He said he had two parties who wanted the position, one who would, he thought, come on next day and take position; that he would write to him at once. Swigart asked for money. Mulford claimed there was nothing due him until he obtained man to fill position. Mulford told him he could have his money as soon as he could get person to fill position. Mulford claimed that Swigart had not fulfilled his contract, and he was under no obligation to pay him until his time was up, but that he

·would pay him as soon as he could get man to take his place .and new man took charge."

The defendant's testimony in relation to this interview and its attendant circumstances is as follows: "When Swigart called Thursday he had a friend with him. I told him I thought I could have a man that week. We agreed upon a settlement at $63. At this time, Thursday, he said he should not go back again. Told him I should hold him responsible for the business until relieved. Asked him to call next day, Friday, and I would tell him how I got along getting a man, as I expected one to commence next morning, and would pay him. Friday morning man engaged came in and said he could not commence till Monday. Repeated this to Swigart Friday and told him I would send a letter to one who had said he was ready to come on Saturday to work. He did not come." Emma Noel, the defendant's cashier, who was also present at said interview, testifies: "On Friday morning Swigart and the gentleman came in again. Mr. Mulford told them that the young man had been in and could not come till Monday, but he had one who did not suit him quite so well who had said he could come Saturday morning, and that he would write to him. Mr. Mulford wrote to him but received no reply."

The next morning, which was Saturday, Swigart came alone. The evidence as to what occurred that day is as follows: Swigart testifies: "I called again Saturday; saw Mulford. He said he had not heard from his party to whom he wrote, but that he had a man for Monday sure, and if I would come in then I could have my money Monday sure. Mulford said he did not propose to give up security until he relieved me and the other party had taken possession. I told Mulford he had promised it to-day; Mulford claimed he had not promised it till he could get another man. I told him I did not know whether I could get it Monday or not. He asked if I thought he wanted to beat me out of my money. I told him I did not know what to think; that if I really did think he wanted to

beat me I would make it hot for him. Mulford replied that
that would do me no good; that if I sued it he would appeal
it and it would take me a year or more to collect it by law
and that it would be expensive also. I then told him I should
not collect it in that way, and that it would cost me nothing."

The defendant testifies: "Saturday morning Swigart called
alone. I told him I had a man for Monday morning sure,
and he should then have his money whether man came or
not. He said he didn't want to make me any trouble; all he
wanted was his money, as he wanted to leave the city. Told
him he should positively have it Monday morning by 10 o'clock,
as I was sure of a man." Emma Noel testifies: "Mr. Swi-
gart came in on Saturday. Mr. Mulford told him how things
were; that he had received no reply, but the one employed
would be in Monday to go to work, and Mr. Swigart should
then have his money sure."

On the same day, Saturday, Swigart caused the defendant
to be arrested and taken before an examining magistrate.
The case came up for hearing the following Monday morning,
and at such hearing the defendant caused the amount of said
deposit to be tendered to the attorney then in attandance on
behalf of Swigart, but, as the evidence tends to show, he
refused to accept it, saying that he preferred to send the de-
fendant to the penitentiary. The evidence also shows that, on
said Monday morning, the person who had been employed by
the defendant to take Swigart's place came to the defendant's
office ready to enter upon said employment.

The foregoing are all the facts appearing in the record bear-
ing upon the question of the defendant's guilt or innocence of
the offense of which he stands convicted. After giving all the
evidence full and careful consideration, we are unable to find
any basis upon which the conviction can stand.

In the first place, the evidence seems to show that the de-
posit with the defendant by Swigart of $50 as security for the
performance by Swigart of his duties as the defendant's agent

38—139 ILL.

and salesman, created between them merely the relation of debtor and creditor, and not that of bailor and bailee. There is nothing in the evidence which leads to any certain conclusion that it was the intention or expectation of the parties that the identical money deposited was to be kept as a special deposit and returned to Swigart in specie when the purpose for which it was deposited was accomplished. On the contrary, the money, the instant it was deposited, was, by the defendant's cashier, mingled with other funds of the defendant so as to be incapable of identification, and this was done in the presence and with the knowledge of Swigart and without objection on his part. This fact appears from his own testimony.

It is impossible to see how, under these circumstances, a subsequent failure or refusal by the defendant to repay said money to Swigart on demand could constitute embezzlement or larceny. It would be merely a failure to pay a debt for which an action might lie, but would be no offense against the criminal law.

Again, the evidence fails to show that Swigart, at the time he demanded said deposit of the defendant was entitled to its return. The defendant and his cashier both testify that Swigart agreed to serve the defendant as agent and salesman for the period of one month, and that said money was deposited as security for the faithful performance of his duties during that term. While Swigart, in his testimony, does not swear that his employment was for a month, he nowhere denies it, and so the testimony of the defendant and his cashier on this point stands uncontradicted. Furthermore, all the witnesses agree that when Swigart demanded the return of his deposit, the defendant insisted that Swigart had agreed to serve him for a full month, and that as that time had not elapsed, Swigart was not entitled, by the terms of his agreement, to the money deposited. Swigart does not pretend that when that claim was preferred he disputed it in the least, and

all the evidence shows that he did not do so, but placed his request for a return of his money solely upon the ground that he had determined to leave the city and that it was for his interest to go away. The inevitable conclusion from the evidence then is, that the defendant's version of the contract is the true one, and that the time at which Swigart would be entitled by his contract to call for a return of his deposit had not arrived. The defendant had a legal right to retain it until the end of the month, and his offer to procure a substitute for Swigart and release him from his contract as soon as such substitute should be procured, was a mere matter of favor to Swigart, and gave him no right to the deposit until a substitute had been procured and had actually taken Swigart's place. The morning the substitute appeared, the defendant tendered to Swigart's attorney the amount of the deposit.

Lastly, the evidence, taken as a whole, entirely fails to charge the defendant with a criminal intent. No attempt is made to show that he got Swigart's money into his hands by any fraudulent or unfair practice, but the transaction,. so far as it is characterized by the evidence, was proper and legitimate, and all that is proved against the defendant is a disposition on his part to stand upon his contract rights. The utmost that can be said is, that there was a dispute between these parties as to the nature of their contract and the rights and liabilities arising therefrom. Said dispute may well have been made the subject of a civil suit, but it presents no elements which should be made the subject of a criminal prosecution.

In our opinion the verdict and judgment are wholly unsupported by the evidence, and the judgment will therefore be reversed, and the cause will be remanded to the Criminal Court, with directions to that court to discharge the defendant.

*Judgment reversed.*