(No. 21842.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. LESTER J. ROBINSON, Plaintiff in Error.

*Opinion filed June 16, 1933.*

ROBERT E. TURNEY, HARRY J. MEYERS, and THEODORE S. ROSENFIELD, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURT-NEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and GRENVILLE BEARDSLEY, of counsel,) for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Plaintiff in error, Lester J. Robinson, was on December 2, 1931, indicted, with Frank Colvan, in the criminal court of Cook county, for larceny. The indictment is in three counts. The first count charges larceny as bailee of a check for $1500, the property of Carl G. Nemeth. The second count charges larceny by embezzlement, and the third count charges simple larceny. Trial by jury was waived by the defendants and they were tried before the court. The trial resulted in a finding of not guilty as to Colvan and a finding of guilty of larceny as bailee as to Robinson. After his motions for a new trial and in arrest of judgment were overruled Robinson was sentenced to imprisonment in the penitentiary for from one to ten years. He has sued out of this court a writ of error for a review of the record.

In the year 1931 Robinson was the manager and directing head of a corporation, Robinson & Co., which was engaged in the business of buying and selling stocks, bonds and other securities at 39 South LaSalle street, in the city of Chicago. Colvan was an officer or employee of that company. In June, 1931, Robinson, Colvan and others organized a corporation called the Century Transportation Company, to engage in the business of transporting passengers and property by motor busses. So far as this case is concerned it may be taken as a fact that the Century Transportation Company was controlled and managed by Robinson & Co. In answer to an advertisement in a news-

paper, John Nemeth and his brother, Andrew, on June 22, 1931, applied at the office of the transportation company for jobs as bus drivers. They were directed to the offices of Robinson & Co., where they talked to Colvan, who told them that they might be given employment if they could each put up $500 as a bond for their honesty and faithfulness as employees. On June 24, 1931, John and Andrew, with their brother Nick and their father, Carl G. Nemeth, returned to the offices of Robinson & Co. and there talked to Robinson. It was agreed that John, Andrew and Nick were to be given employment by the transportation company, John and Andrew as bus drivers and Nick as ticket agent, and $500 was to be deposited by their father for each of them as security for their honesty and faithfulness as employees. A check on the Wheeling State Bank, Wheeling, Illinois, for $1500, payable to the order of Robinson & Co., was signed by Carl G. Nemeth and delivered to Robinson. This check was later indorsed by Robinson & Co. and deposited to its credit in its account in the Union Bank of Chicago. A receipt for $500 on the letter-head of Robinson & Co. was given to each of the Nemeth boys. The receipt given to John is as follows:

"Received from John Nemeth, box 45H, Norwood Park, Illinois, the sum of five hundred dollars ($500) to be held by us as a bond of faithful performance as a driver in our employ. It is understood by and between us that in the event that John Nemeth wishes to leave our employ that he must give us two (2) weeks' notice and if we desire to dispense with his services we are to give him two (2) weeks' notice, and at the end of this time he is to receive his pay, plus the five hundred dollars ($500) above referred to, together with interest at the rate of three per cent (3%) if the money is deposited with us for a period of three (3) months or any multiple thereof.　　CENTURY MOTOR LINES,

· By H. G. Hoffman, *President.*

Guaranteed by Robinson & Company,
　By L. J. Robinson, *President."*

Except for name the receipt given Andrew is the same as the one given John. The receipt given Nick is the same

as the others except as to name and the designation of the nature of his employment, which in his case was ticket agent. John and Andrew were engaged as drivers of busses and Nick was engaged as ticket agent for the transportation company until some time in the following September. On or about September 10, 1931, John and Andrew gave notice to Robinson that they desired to and were going to leave the employment of the transportation company. On several days thereafter they demanded the return of the money deposited for them by their father, but Robinson kept postponing the day of returning the money. On September 19, 1931, at their insistence Robinson gave them a statement in writing, as follows:

"John Nemeth,
Andrew Nemeth.

"I hereby agree to give you one thousand dollars ($1000) cash on Monday, September 21, 1931, in payment of your cash bond placed with the above company.      L. J. ROBINSON."

Nick Nemeth also, some time in September, 1931, gave Robinson notice that he was leaving the employment of the transportation company and after two weeks demanded of Robinson the return of the $500 deposited for him, but Robinson refused to pay or return the money to him. None of the $1500 represented by the check given to Robinson by Carl G. Nemeth was returned to him or his sons by Robinson. The transportation company went out of business on October 20, 1931, and Robinson & Co. ceased doing business on December 10, 1931.

Robinson testified that on June 24, 1931, when Carl G. Nemeth gave him the check for $1500, he told him and his three sons that the money would be used in the business of the transportation company. Nemeth and his three sons denied that Robinson so told them. John and Andrew testified that Robinson stated that "the money would be just as if it were in the bank." Carl G. testified that Robinson said

that "this money was going into the bank or be just as good as in the bank, and that they would draw interest on it every three or six months."

Other facts and testimony that appear in the record need not be stated, because the only point made and argued by plaintiff in error as ground of reversal is that he did not become a bailee of the check for $1500 or the money represented by it, and therefore is not guilty of larceny as bailee of the check, as charged in the first count of the indictment, on which he was found guilty.

Before there can be a conviction under section 170 of the Criminal Code, which provides that if any bailee of any bank bill, note, money or other property shall convert the same to his own use with intent to steal the same he shall be deemed guilty of larceny, it must be shown that there was a bailment and that the property was held by the defendant as bailee. (*People* v. *Wildeman,* 325 Ill. 99.) When personal property is delivered by one person to another under an agreement that the same property is to be restored to the person delivering it, in the same or an altered form, the contract is one of bailment and title to the property remains in the bailor, but when there is no obligation to restore the specific property and the receiver is at liberty to return another thing of equal value or the money value, the title to the property passes to him and he is not a bailee. (*People* v. *Wildeman, supra; Richardson* v. *Olmstead,* 74 Ill. 213; *Lonergan* v. *Stewart,* 55 id. 44.) The contract may also be one of bailment in the case of a factor or agent where the bailee has the right and authority to dispose of the property by sale or otherwise, as directed or agreed upon for the benefit of the bailor, but in such case title to the property in the hands of the bailee remains in the bailor until the property is sold or disposed of in accordance with the authority given him. *People* v. *Barnard,* 327 Ill. 305; *First Nat. Bank of Elgin* v. *Schween,* 127 id. 573; *Taylor* v. *Turner,* 87 id. 296.

In *Wetherell* v. *O'Brien*, 140 Ill. 146, a sum of money was deposited in a bank to be by it held until it could invest it in a good real estate mortgage loan for the depositor, and the deposit was handled in the usual way by the bank and a pass-book showing the amount deposited was issued to the depositor. It was held that there was not a bailment. The court said: "When the identical thing delivered is to be restored, though in an altered form, the contract is one of bailment, but when the obligation is to return other things of the like kind and equal in value it becomes a debt." A similar holding was made in *Mutual Accident Ass'n* v. *Jacobs*, 141 Ill. 261, where there was deposited in a bank a check for $6000 on another bank, the deposit being made to indemnify sureties on an appeal bond, and the certificate of deposit issued by the bank, after reciting the taking of an appeal and the giving of an appeal bond, stated that the $6000 was to be returned when the sureties were discharged from liability on the bond. In *Woodhouse* v. *Crandall*, 197 Ill. 104, a lessee delivered $1500 in currency to a bank to be held for one year as security for the lessor of the faithful performance by the lessee of the covenants of the lease. The court held that, notwithstanding the fact that the $1500 was commingled with the other moneys in the bank, it was a trust fund, but said that the transaction was not a bailment. In *Mulford* v. *People*, 139 Ill. 586, an employee deposited with his employer $50 as security for the performance by the employee of his duties. The court held that the relation created was that of debtor and creditor and not of bailor and bailee, and said: "There is nothing in the evidence which leads to any certain conclusion that it was the intention or expectation of the parties that the identical money deposited was to be kept as a special deposit and returned to Swigart in specie when the purpose for which it was deposited was accomplished. On the contrary, the money, the instant it was deposited, was by the defendant's cashier mingled with other funds of the

defendant so as to be incapable of identification, and this was done in the presence and with the knowledge of Swigart and without objection on his part."

In this case it is manifest that it was not the intention or understanding of the parties that Robinson should hold the check, which was the property delivered to him and of the larceny of which he was charged in the indictment, without cashing it or depositing it in the bank. Carl G. Nemeth testified that Robinson told him the money was going into a bank or would be the same as in a bank, and so he did not understand that Robinson was to hold the check. It is likewise clear that Carl G. and his sons did not intend or understand that Robinson was to cash the check and hold and keep the currency or cash received for the check in a separate package, or in three separate packages of $500 each. They understood that the money was to draw interest and was to be "the same as if it were in a bank." The obligation to pay interest on the money is inconsistent with the idea that it was to be held by Robinson as bailee without being used, and it is well established that when money is deposited in a bank the relation between the bank and the depositor is not that of bailee and bailor but debtor and creditor. (*Kamfner* v. *Auburn Park Trust and Savings Bank,* 344 Ill. 200; *Sullivan* v. *Arcola State Bank,* 314 id. 40.) Since Robinson was not bailee of the check or of the money represented by it he is not guilty of the crime of larceny as bailee. *People* v. *Wildeman, supra.*

The Attorney General, to sustain the conviction, relies upon *People* v. *Farnsworth,* 324 Ill. 96, *Young* v. *People,* 193 id. 236, and *Bergman* v. *People,* 177 id. 244. In the *Farnsworth case* two checks, one for $100 and one for $750, were delivered to the defendant as part payment for a piece of real estate which he said he had for sale, and in the *Young case* a note was delivered by the owner thereof to the defendant, as her agent, to have the time of payment

thereof extended. In these cases the convictions of the defendants of larceny as bailees were sustained, but in neither of them was the question of whether there was actually a bailment raised or discussed. In the *Bergman case* jewelry was delivered to the defendant to be by him returned or disposed of for the benefit of the jeweler in the particular way agreed upon between the jeweler and the defendant. The jewelry was not sold or returned. In that case there was clearly a bailment.

Whether, under the facts of this case, Robinson is guilty of any other crime than larceny as bailee we are not called upon to determine. He was convicted of larceny as bailee. The evidence does not prove him guilty of that crime, because it does not show that he was bailee of the property he was accused of stealing.

The judgment of the criminal court is therefore reversed.

*Judgment reversed.*