(No. 22975

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANCES STREICH, Plaintiff in Error.

*Opinion filed October 24, 1935.*

JONES, J., dissenting.

HARRINGTON & McDONNELL, (JOSEPH T. HARRINGTON, of counsel,) for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, HENRY E. SEYFARTH, and JOHN T. GALLAGHER, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The defendant, Frances Streich, plaintiff in error, was convicted in the criminal court of Cook county of the crime of larceny by embezzlement and sentenced to the State Reformatory for Women at Dwight for a term of from one to ten years. She was indicted and tried jointly with Marion Leighton. The jury was waived. She prosecutes this separate writ of error.

The third count of the indictment, under which the defendant was found guilty, charges that Marion Leighton and Frances Streich on May 17, 1933, as agents in the employ of Cora J. Clark, fraudulently and feloniously, and without her consent, embezzled $150 of her money, and that this money came into their possession by virtue of their employment. Upon motion the State's attorney was ordered to file a bill of particulars. The court denied a written motion to strike from it all other similar transactions which, it was contended, were not within the scope of the indictment.

Cora J. Clark testified that she had been a school teacher for twenty-six years, and that she met the defendant and Marion Leighton in January or February of 1933. At that time she talked with them at their office. They represented

that they could dispose of teachers' warrants to clients who could use them in paying taxes; that they would be glad to do this to help the teachers and to create good will, and that in return they expected the teachers to help them in their business. They stated that the payment for a particular warrant was not to be expected immediately but that it would not be made for thirty days. On May 17, 1933, this witness sent to the office of Leighton & Streich, by registered mail, three Chicago board of education tax warrants, each in the amount of $50. When she demanded payment, a month later, she testified that Miss Streich made various excuses for not paying her and promised that they would be able to pay within two or three days. She talked with the defendant several other times but did not receive the money due her. On cross-examination she described two previous similar transactions in February and March, 1933, with Leighton & Streich, in which she received par for her tax warrants. She also said that at the time she left her warrants her only interest was to receive back their par value. She had been introduced to the defendants by Mrs. Morgan, who had had similar dealings with them and had been paid. Mrs. Clark testified that she left the warrants because she could get more money for them from Leighton & Streich than she could otherwise; that she relied on the honesty and responsibility of the defendants; that her dealings were perfectly agreeable, and that the defendants did not solicit her and did not have any agents or solicitors.

For the purpose of showing a criminal intent the People called Marion Sykes and Mrs. Mary Blodgett, employees of the board of education, who testified that they delivered to Leighton & Streich similar warrants in June or July, 1933, upon similar representations made to these witnesses. Likewise payment was not to be made for a month or six weeks. When Miss Sykes called at the office of the defendants in August, 1933, and demanded return of the

tax warrants, she was told that the defendants' client had not been able to pay the taxes because there was some litigation about them and that they expected to have the whole thing settled soon. Other demands for payment were met with various excuses.

Raymond Young, a bond trader, testified that on May 18, 1933, his firm purchased from Leighton & Streich, Inc., three tax warrants at the rate of $93 per $100, plus accrued interest. He testified to other purchases from this corporation.

The defendant Streich testified that she and Marion Leighton organized a corporation with capital of $20,000 in June of 1932, known as Leighton & Streich, Inc. Its objects were to deal in real estate and insurance. In May, 1933, the charter was amended and the capital was increased to $100,000, and its powers were expanded to permit the corporation to deal in securities, commodities and other items of commerce. Miss Streich was vice-president and treasurer. In June, 1932, while engaged in the real estate and insurance business, it traded in investments, securities and in the commodity market. It purchased commodities and investments both outright and on margin, but most of these purchases were on margins. It began taking tax warrants in February, 1933, and the teachers were told that they would be paid par. The warrants received were sold on the open market. Payment was dependent upon the rise and fall of the market. The proceeds derived from the sale of tax warrants were used in investments in the stock and commodity markets. She testified that she first met the complaining witness in February, 1933, at the corporation's office; that Mrs. Clark came there with Mrs. Morgan and Mrs. Kinzie; that Mrs. Morgan asked the defendant if they were still buying tax warrants at par, and upon being told that they were, Mrs. Clark left $100 in warrants and took a receipt dated February 27, 1933.

These warrants were sold by the corporation for $85 per $100 and Mrs. Clark was paid $100 by the corporation's check. The check was signed by Frances Streich as treasurer and countersigned by Marion F. Leighton as president. Defendant testified that Mrs. Clark was not to be paid the proceeds of the warrants named in the indictment and that they were sold by the corporation as its property. On March 1, 1933, Mrs. Clark brought in $200 worth of tax warrants and was given a receipt signed, "Leighton & Streich, by M. F. Leighton." It acknowledged receipt of the warrants and contained a notation, "to be returned for cash within thirty days." These warrants were sold at $88 per $100 but Mrs. Clark was paid $200, their par value, by the corporation's check. Miss Streich testified further that she did not see Mrs. Clark at all in connection with the warrants mentioned in the indictment prior to the time they were received by mail at the office of the corporation on May 17, 1933; that there was "an indefinite arrangement" made concerning payment to the complaining witness for them, but that the corporation felt it could pay for the warrants in approximately sixty days. She denied that she was ever in the employ of Mrs. Clark or acting as her agent, and denied that she converted any of the property or money of Mrs. Clark to her own use. She said that the corporation, because of the condition of its business, had not been able to pay Mrs. Clark, and that the proceeds from the sale of these warrants were deposited in its bank account.

Harold E. Bell, a public accountant, testified that he audited the corporation's books for the year 1933; that it purchased $79,370.99 of tax warrants and suffered a loss on them of $5622.35. He said that the corporation lost $25,332 on its investments in that year. Three witnesses testified to the reputation of the defendants for honesty and integrity.

The defendant contends that the judgment should be reversed because (1) the trial court erred in denying her

motion to strike that part of the bill of particulars which set forth offenses other than the offense charged in the indictment; (2) the court erred in its rulings on evidence; (3) the court erred in denying the motion to compel the People to elect upon which count they were relying when testimony was offered. as to other alleged transactions; (4) the People failed to prove the *corpus delicti* of the crime of embezzlement; (5) that the evidence is insufficient to sustain the finding and judgment of the court; and (6) the court erred in denying the motions for a finding of not guilty at the close of the People's evidence and at the close of all the evidence.

In the view we take of the case only those assignments of error which question the sufficiency of the proof need be considered. It was incumbent upon the People to prove that the tax warrants which are alleged to have been embezzled were entrusted to the defendant as agent of Cora J. Clark, that the warrants were her property, and that there was a felonious conversion. The proof does not establish that the defendants or the corporation were acting as agents for Mrs. Clark. The proof shows that the transaction was a sale rather than a bailment between the defendants or the corporation and Mrs. Clark. A debtor-creditor relationship existed. The crime of embezzlement differs from that of larceny in that in embezzlement the original possession is lawful. Possession of the funds or property is acquired by reason of the relation of principal and agent or employee. The gravamen consists of the subsequent conversion of the property so received, with felonious intent on the part of the agent or employee to convert it to his own use. The crime of embezzlement is not established by showing that an unsettled account exists between the principal and agent or where a debtor-creditor relation is shown. The People must further prove, beyond all reasonable doubt, that the agent converted the property to his own use with the felonious intent to deprive the owner of

the property of its use. (*People* v. *Parker*, 355 Ill. 258, 285; *People* v. *Munday*, 358 id. 470; *People* v. *Stevens*, id. 388.) Such proof was not made in this case. The receipts issued in February and March, 1933, were signed "Leighton & Streich, by Marion F. Leighton," and the checks given in payment were signed "Leighton & Streich, Inc.—Frances Streich, Treas.," and countersigned by "Marion F. Leighton, Pres." These checks were made some weeks later in payment, in accordance with the terms of the receipts.

The trial court erred in failing to allow the defendant's motion to direct a verdict at the close of all the evidence, and the judgment is reversed. *Judgment reversed.*

Mr. JUSTICE JONES, dissenting.