(No. 51768

(No. 51835

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. BUFFALO CONFECTIONERY COMPANY *et al.*, Appellees.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. LAWRENCE LIEBERMAN *et al.*, Appellees.—THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ERNEST DUKE McNEIL, Appellee.

*Opinion filed February 22, 1980.*

450

WARD, J., and GOLDENHERSH, C.J., concurring in part and dissenting in part.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay, Melbourne A. Noel, Jr., Fred Montgomery, and Michael B. Weinstein, Assistant Attorneys General, of Chicago, of counsel), for the People.

George J. Cotsirilos and Robert M. Stephenson, of George J. Cotsirilos & Associates, Ltd., of Chicago, for appellees Lawrence Lieberman and L & S Foods, Inc.

Joseph V. Roddy, of Chicago, for appellees Buffalo Confectionery Company and Peter Nichols.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay, Melbourne A. Noel, Jr., Fred Montgomery, and Michael B. Weinstein, Assistant Attorneys General, of Chicago, of counsel), for the People.

No appearance for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This case is a consolidation in this court of two cases in which we granted the State's petition for leave to appeal. It concerns the permissible degree of participation by the Attorney General in the prosecution of cases arising out of the revenue statutes of this State. One of these cases also raises the issue of the propriety of charging the offense of theft under the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1)) for a retailer's failure to pay to the State of Illinois use tax monies as required under the Use Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 439.1 *et seq.*). The Buffalo Confectionery case (No. 51768) is itself a consolidation of two cases by the appellate court. In each of those cases indictments had been returned against a business entity and an individual. Following dismissal of the indictments by the trial court in each case, the State appealed. The appellate court consolidated the cases on appeal and affirmed the dismissal. (*People v. Buffalo Confectionery Co.* (1978), 67 Ill. App. 3d 112.) We granted the State's petition for leave to appeal.

One of the cases in the consolidated Buffalo Confectionery case involved Buffalo Confectionery Company and Peter Nichols, a partner. They were each indicted by a Cook County grand jury on two counts of theft in excess of $150 (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1)). These defendants filed a motion to dismiss, claiming the indictment had been improperly obtained because: (1) an assistant Attorney General had appeared before the grand

jury unaccompanied by an assistant State's Attorney; and (2) the defendants were improperly charged with a felony under the Criminal Code of 1961 for conduct which, if proved, would constitute a misdemeanor under section 14 of the Use Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 439.14). Since the statute of limitations would bar the filing of the misdemeanor action, the defendants argued that the indictments should be dismissed. In the other case consolidated in the Buffalo Confectionery case, a Cook County grand jury indicted the defendants, L & S Foods, Inc., and Lawrence Lieberman, a corporate officer, on 17 counts of theft in excess of $150 (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1)). In addition, Lieberman was indicted on eight counts of signing and filing a fraudulent retailer's occupation tax return (Ill. Rev. Stat. 1973, ch. 120, par. 452) and L & S Foods, Inc. was indicted on eight counts of filing a fraudulent retailer's occupation tax return (Ill. Rev. Stat. 1973, ch. 120, par. 452).

In each case an assistant Attorney General had appeared before the grand jury unaccompanied by either the State's Attorney or an assistant State's Attorney, and had stated that she or he was assisting a named assistant State's Attorney. The signature of Bernard Carey, the Cook County State's Attorney, appeared on the indictments, with the exception of the L & S Foods, Inc., indictment. An assistant State's Attorney appeared at each defendant's arraignment and filed a motion for pretrial discovery. The appellate court affirmed the dismissal of all the indictments in these consolidated cases, finding the appearances of the assistant Attorneys General before the grand jury to have been improper in that they were neither authorized by the court nor by law, as required by the grand jury secrecy provision of section 112—6(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 112—6(a)). *People v. Buffalo Confectionery Co.* (1978), 67 Ill. App. 3d 112, 116.

The other case (No. 51835) which we have in this court consolidated with the consolidated case we have discussed (No. 51768) involves one defendant, Ernest Duke McNeil. On April 12, 1976, an investigator for the Department of Revenue filed two complaints in the circuit court of Cook County, each charging the defendant with wilful failure to file an Illinois income tax return for the years 1973 and 1974 in violation of section 1301 of the Illinois Income Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 13—1301). Defendant McNeil filed a motion to dismiss the complaints, claiming that the assistant Attorney General had improperly initiated and prosecuted the case. During the hearing on defendant's motion, the assistant Attorney General presented a letter, dated November 23, 1977, from the Cook County State's Attorney which gave the office of the Attorney General authorization to prosecute the case "effective immediately." The trial court dismissed the complaints and the appellate court affirmed. (*People v. McNeil* (1979), 68 Ill. App. 3d 499, 501.) As noted above, this court granted leave to appeal and consolidated this case with the Buffalo Confectionery Company case.

We consider first the issue common to both cases on appeal; that is, whether the Attorney General exceeded his authority in the initiation and prosecution of these revenue cases. For the reasons expressed herein, we find that the Attorney General did not exceed the scope of his authority.

The office of the Illinois Attorney General is a creature of the Illinois Constitution. Article V, section 15, of the Illinois Constitution of 1970 provides:

> "The Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law."

In *Fergus v. Russel* (1915), 270 Ill. 304, this court found that the 1870 Constitution granted the Attorney General all the powers associated with that office at common law,

and expressly stated that while the legislature could add to these powers, it could not detract from the Attorney General's common law authority. (*Fergus v. Russel* (1915), 270 Ill. 304, 339.) (See also *Stein v. Howlett* (1972), 52 Ill. 2d 570, 586, *appeal dismissed* (1973), 412 U.S. 925, 37 L. Ed. 2d 152, 93 S. Ct. 2750; *Department of Mental Health v. Coty* (1968), 38 Ill. 2d 602, 606.) In *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 500-01, this court concluded that the principle of *Fergus v. Russel* has been incorporated into article V, section 15, of the 1970 Illinois Constitution.

In the case of *People v. Massarella* (1978), 72 Ill. 2d 531, we examined the common law powers and duties of the Attorney General and found them to include the initiation and prosecution of litigation on behalf of the People. This power may be exercised concurrently with the power of the State's Attorney to initiate and prosecute all actions, suits, indictments and prosecutions in his county as conferred by statute (Ill. Rev. Stat. 1973, ch. 14, par. 5). (Accord, Note, *The Relationship Between the Attorney-General and State's Attorney in Illinois,* 1949 U. Ill. L.F. 507; *People v. Nagano* (1945), 389 Ill. 231, 249.) We further noted that we have previously held in *People v. Looney* (1924), 314 Ill. 150, 153-54, that the defendant has no basis for objecting to the appearance of the Attorney General before the grand jury where the State's Attorney made no objection. *People v. Massarella* (1978), 72 Ill. 2d 531, 536. Accord, *People v. Billburg* (1924), 314 Ill. 182, 184-85.

The legislature has enumerated certain duties of both the Attorney General and the State's Attorney. By statute, the Attorney General is authorized, *inter alia,* to "attend *** and assist in the prosecution" (Ill. Rev. Stat. 1973, ch. 14, par. 4), and the State's Attorney is authorized, *inter alia,* to "commence and prosecute all actions *** in the circuit court for his county, in which the people of the State or county may be concerned" (Ill. Rev.

Stat. 1973, ch. 14, par. 5). As we have previously stated, the aforementioned duties and powers of the two officers are concurrent. Thus, the Attorney General lacks the power to take exclusive charge of the prosecution of those cases over which the State's Attorney shares authority. (*People v. Flynn* (1941), 375 Ill. 366, 368.) However, where the statute so provides, the Attorney General has exclusive authority to institute and prosecute cases. See, *e.g.*, Ill. Rev. Stat. 1977, ch. 120, par. 453.16 (Cigarette Tax Act prosecution); Ill. Rev. Stat. 1977, ch. 38, par. 60–6 (Illinois Antitrust Act prosecution).

It is clear, however, that the Attorney General lacks the authority to initiate an action under the statutes here involved to the exclusion of the State's Attorney. This lack of exclusive authority to prosecute revenue claims is reflected in the legislative rejection of House Bill 2063 and Senate Bill 976 in the 79th General Assembly. These bills, defeated in the 1975 session of the General Assembly, would have amended section 4 of "An Act in regard to attorneys general and state's attorneys" (Ill. Rev. Stat. 1973, ch. 14, par. 4) by giving to the Attorney General authority to commence and prosecute offenses involving criminal activity in the collection of State revenues. See *People v. Massarella* (1977), 53 Ill. App. 3d 774, 784-85.

Since the Attorney General lacked exclusive authority to prosecute these claims, we must determine whether the Attorney General exceeded his authority in the cases before us. The case of *People v. Massarella* (1978), 72 Ill. 2d 531, is apposite. In *Massarella* this court held that the Attorney General was authorized to appear before the grand jury where the State's Attorney expressed no objection. We also held in that case that the grand jury secrecy provision of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 112–6(a)) did not prohibit the Attorney General from appearing before the grand jury. We find the facts in our case to be nearly indis-

tinguishable from those of *Massarella*. Although the indictments we are considering were obtained through the actions of assistant Attorneys General and no assistant State's Attorney was present, the grand juries were informed that the assistant Attorneys General were assisting named assistants to the State's Attorney. Three of the four indictments were signed by the State's Attorney, and an assistant State's Attorney attended each arraignment and certain pretrial discovery proceedings were conducted in the name of the State's Attorney. Not only is there an absence of objections by the State's Attorney to the Attorney General's participation, but also there was an obvious acquiesence by the State's Attorney. Our holding in *Massarella* compels the conclusion that the Attorney General in these indictments was acting within his authority.

Defendants claim that the appearance of the assistant Attorneys General before the grand jury violated the grand jury secrecy provision of the Code of Criminal Procedure of 1963. The provision provides:

> "Only the State's Attorney, his reporter and any other person authorized by the court *or by law* may attend the sessions of the Grand Jury. Only the grand jurors shall be present during the deliberations and vote of the Grand Jury. ***" (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 38, par. 112—6(a).)

This same issue was raised in *People v. Massarella* (1978), 72 Ill. 2d 531. In *Massarella* we found the statute was intended to further a policy of grand jury secrecy rather than to enumerate the powers of the State's Attorney, and we stated: "We do not believe the grand jury provisions can be so narrowly construed as to render the Attorney General's power to initiate and prosecute these cases a nullity." *People v. Massarella* (1978), 72 Ill. 2d 531, 539.

The appellate court has read into our holding in *Massarella* not only the requirement that the State's Attorney must approve of the Attorney General's appear-

ances before the grand jury but also that the Attorney General must be authorized to do so by the court. That was not the holding of the majority opinion in *Massarella.* This is clear when one reads the dissent in *Massarella* which urged, in opposition to the majority opinion, that the trial court had not authorized the appearance of the Attorney General before the grand jury which, the dissent contended, was a prerequisite of his authority to do so.

We are aware that this section of the statute was amended by House Bill 65 in 1975 to add the words "or by law" (italicized above) and that we did not have occasion in the *Massarella* case to interpret the statute as amended. However, the additional language does not alter our position; that is, that the grand jury secrecy provision, as amended, neither limits nor extends the power of the Attorney General to initiate and prosecute cases in concert with the State's Attorney. Indeed, the House discussions concerning the amendment indicate that the purpose of the amendment was to allow a "target" witness to have counsel present in the grand jury room and yet preserve the secrecy of the grand jury proceeding. (79th Gen. Assem., H.R. Rec. 53—9.) Therefore, we conclude that the appellate courts erred in finding the Attorney General to have improperly prosecuted these actions.

Defendant McNeil's case did not involve a grand jury proceeding. As stated above, the prosecution against this defendant was instituted by the filing of two complaints by an investigator for the Department of Revenue charging McNeil with wilful failure to file Illinois income tax returns for the years 1973 and 1974. We are therefore not concerned with the grand jury secrecy provisions of the Code of Criminal Procedure of 1963 discussed above. Contrary to the defendant's contention, the Attorney General did not initiate these proceedings. The complaints, as stated above, were filed by an investigator for the Department of Revenue pursuant to leave of court, and summons was issued thereon. The Attorney General's

participation was in the prosecution of the charges. The State's Attorney of Cook County did not object, and in a letter dated November 23, 1977, he specifically authorized the Attorney General's participation prior to the trial court's dismissal of the charges. Under our holding in *Massarella,* the Attorney General did not exceed his authority in the prosecution of these complaints, and the trial court erred in dismissing them.

We consider next defendants' contention in the Buffalo Confectionery case (No. 51768) that the charge of theft in excess of $150 (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1)) for the failure to pay to the State taxes in compliance with the provisions of the Use Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 439.1 *et seq.*) and the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 440 *et seq.*) was improper.

The defendants attack the charge of theft on two alternative grounds: First, they argue that the revenue penalty provisions and the theft statute contain identical elements. The State was thus compelled, they argue, to further the legislative will and charge the more specified offense under the revenue statute. Second, the defendants claim that the revenue acts give rise to a debtor-creditor relationship between the taxpayer and the State and that such relationship is inconsistent with the charge of theft.

We have repeatedly stated that the State has the discretion to prosecute under either of two statutes where a defendant's conduct violates both statutes and the statutes contain different elements. This principle remains unchanged even where the violation of one of the statutes would constitute a felony while the violation of the other would merely constitute a misdemeanor. *People v. Brooks* (1976), 65 Ill. 2d 343, 347; *People v. Gordon* (1976), 64 Ill. 2d 166, 170; *People v. Barlow* (1974), 58 Ill. 2d 41, 44; *People v. Keegan* (1971), 52 Ill. 2d 147, 153, *appeal dismissed* (1972), 406 U.S. 964, 32 L. Ed. 2d 663, 92 S. Ct. 2408; *People v. Parks* (1971), 48 Ill. 2d 232,

236, *cert. denied* (1972), 404 U.S. 1020, 30 L. Ed. 2d 669, 92 S. Ct. 691; *People v. Rhodes* (1967), 38 Ill. 2d 389, 396.

The penalty provision of the Use Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 439.14) does not contain the same elements as does the theft statute under which the defendants were charged (Ill. Rev. Stat. 1973, ch. 38, par. 16—1(a)(1)). Under the theft charge the State must prove that the defendants intend to deprive the owners permanently of the use or benefit of the property. Under the Use Tax Act the failure to pay over the funds to the Department of Revenue constitutes an offense. (Ill. Rev. Stat. 1973, ch. 120, pars. 439.9, 439.14.) The State, under the Use Tax Act, need not prove the element of intent which is necessary to be proved under the theft charge. (See *People v. Player* (1941), 377 Ill. 417.) The criminal intent required for a conviction of the offense of theft is plainly not a necessary element of the offense of failure to pay over to the State use tax monies under the Use Tax Act. A comparison of the provisions of the penalty sections of the Use Tax Act with the statutes involved in *Brooks* and *Gordon* compels the conclusion that the decisions in those cases are controlling and that the defendants in this case, except for the reason discussed below, could be properly charged with the offense of theft.

We consider, however, that the alternate contention of the defendants makes the charging of the felony of theft impermissible. Under the statute, the relationship between the retailer and the State of Illinois is that of debtor and creditor, which relationship will not support a charge of theft. Section 8 of the Use Tax Act provides:

> "The tax herein required to be collected by any retailer pursuant to this Act, and any such tax collected by any retailer *shall constitute a debt owed by the retailer to this State\*\*\*.*" (Emphasis added.) Ill Rev. Stat. 1973, ch. 120, par. 439.8.

The Use Tax Act imposes a tax upon the privilege

of using, in this State, tangible personal property purchased at retail from a retailer. (Ill. Rev. Stat. 1973, ch. 120, par. 439.3.) The purpose of the tax is to prevent avoidance of the retailers' occupation tax by those making out-of-State purchases and to protect Illinois merchants against diversion of business to out-of-State retailers. (*Klein Town Builders, Inc. v. Department of Revenue* (1966), 36 Ill. 2d 301, 303; Note, 62 Nw. U.L. Rev. 738, 791 (1967).) The use tax scheme was thus designed to complement the Retailers' Occupation Tax Act. *Turner v. Wright* (1957), 11 Ill. 2d 161, *appeal dismissed* (1957), 355 U.S. 65, 2 L. Ed. 2d 106, 78 S. Ct. 140.

The use tax is generally collected from the purchaser by the retailer. However, if the transaction is subject to both the retailers' occupation tax and the use tax, the retailer may remit to the Department of Revenue the tax owed under the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 440 *et seq.*) and reimburse himself by collecting the use tax from the purchaser at the time of the transaction (Ill. Rev. Stat. 1973, ch. 120, par. 439.9). The retailer is thus able to recoup payment for the retailers' occupation tax by withholding payment for an equal amount of proceeds collected under the Use Tax Act. *Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 340.) See also *Johnson v. Marshall Field & Co.* (1974), 57 Ill. 2d 272 (municipal retailers' occupation tax).

The State clearly has the authority to pursue a retailer for his failure to pay taxes due under the Retailers' Occupation Tax Act. (Ill. Rev. Stat. 1973, ch. 120, par. 452.) The State is authorized, under the Use Tax Act, to pursue either the delinquent purchaser or the delinquent retailer. (Ill. Rev. Stat. 1973, ch. 120, par. 439.14.) Thus, where a transaction is subject to both taxes, the State may proceed against either the purchaser-user for the use tax or against the retailer-seller for the retailers' occupation tax. *Klein Town Builders, Inc. v. Department of Revenue* (1966),

36 Ill. 2d 301, 304.

It is clear here that the legislature intended the use taxes, whether collected or not by a retailer, to constitute a debt owed to the State. By virtue of this language, the State is able to impose liability upon the retailer regardless of whether he has collected the use tax. Thus, the State is able to expedite its use-tax-collection procedure in that it is not required to seek out each purchaser liable under the Use Tax Act. See Note, 62 Nw. U.L. Rev. 738, 791-94 (1967). Consistent with this interpretation, in *Department of Revenue v. National Bellas Hess, Inc.* (1966), 34 Ill. 2d 164, *rev'd on grounds not pertinent to this appeal* (1967), 386 U.S. 753, 18 L. Ed. 2d 505, 87 S. Ct. 1389, this court stated:

> "Section 3 of the Use Tax Act provides that the tax imposed on the purchaser-user is to be collected by the retailer. Section 8 provides that 'the tax herein required to be collected by any retailer pursuant to this Act, and any such tax collected by any retailer shall constitute a debt owed by the retailer to this State***.' The effect of these two sections is that the [use] *tax is to be collected by the retailer; but if he fails to collect the tax, he himself is liable for its payment.*" (Emphasis added.) 34 Ill. 2d 164, 173.

Because of the complementary relationship of the Use Tax Act and the Retailers' Occupation Tax Act and the overlapping of the two taxes, the legislature, in order to facilitate the collection of the tax monies due to the State under the two acts, has seen fit to create a debtor-creditor relationship between the retailer and the State for the tax monies due. Similar provisions are found in the Service Use Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 439.38), the Service Occupation Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 439.108), and the Cigarette Use Tax Act (Ill. Rev. Stat. 1977, ch. 120, par. 453.40).

This court has held that evidence of the type of transaction which leads only to a debtor-creditor relationship will not support a charge of embezzlement or larceny by a bailee. *(People v. Becker* (1953), 414 Ill. 291, 298.) In *Mulford v. People* (1891), 139 Ill. 586, 594, the court, in discussing the failure of a defendant to repay money on demand, stated: "It is impossible to see how, under these circumstances, a subsequent failure or refusal by the defendant to repay said money *** could constitute embezzlement or larceny. It would be merely a failure to pay a debt for which an action might lie, but would be no offense against the criminal law." See also *People v. Robinson* (1933), 352 Ill. 596, 602. For numerous cases from other jurisdictions reaching similar results, see 29A C.J.S. *Embezzlement* sec. 10, at 22-23 (1965).

The State contends that once the element of intent to permanently deprive an owner of the use or benefit of his property is added to the debtor-creditor relationship, it then ripens into the crime of theft. In support of this proposition, the State cites *People v. Streich* (1935), 361 Ill. 490, and *People v. Parker* (1934), 355 Ill. 258. The language used in those cases refers to the receiving and holding of funds or property of another as not being enough in and of itself to establish embezzlement: "The People must further prove *** that the agent converted the property to his own use with the felonious intent to deprive the owner of the property or its use." *(People v. Parker* (1934), 355 Ill. 258, 285.) In our case we do not have a situation where an agent is holding property belonging to another. We have the situation of a retailer who is a debtor under the statute and has failed to pay a debt owed to the State of Illinois. Under these facts it is improper for the State to institute prosecution for theft merely to collect a debt. See 50 Am. Jur. 2d *Larceny* sec. 111 (1970).

The State also cites *People v. Kopman* (1934), 358

Ill. 479, in support of its position that it was proper to charge the defendants with theft. In that case the defendant was a distributor of motor fuel who collected the tax on the fuel sold and converted the tax monies to his own use. The statute (Smith-Hurd Ill. Rev. Stat. 1933, ch. 120, par. 418) contained no provision creating a debtor-creditor relationship between the distributor and the State. This court noted that under the statute the distributor was the agent of the State as a collector of the tax, which came into the hands of the distributor while he was acting in a fiduciary capacity. This court held that the money did not belong to the distributor but to the State. This is an entirely different legal relationship than that which exists under the Use Tax Act. *Kopman* is not apposite.

For these reasons we conclude that the defendants, as debtors of the State, cannot be charged with theft.

Accordingly, the judgments of the appellate and circuit courts in cause No. 51768 (Buffalo Confectionery Co. *et al.*) are affirmed as to the dismissal of the indictments charging the defendants with theft and reversed as to the dismissal of the counts in the indictment charging Lieberman and L & S Foods, Inc., with violation of section 13 of the Retailers' Occupation Tax Act (Ill. Rev. Stat. 1973, ch. 120, par. 452) and the cause is remanded to the circuit court of Cook County. The judgments of the appellate and circuit courts in cause No. 51835 (People v. McNeil) are reversed, and the cause is remanded to the circuit court of Cook County.

> *51768 — Affirmed in part and reversed in part; cause remanded.*
> *51835 — Reversed and remanded.*

MR. JUSTICE WARD, concurring in part and dissenting in part:

I disagree with the majority basically for the reasons stated in my dissent in *People v. Massarella* (1978), 72 Ill. 2d 531.

I consider that from *Massarella* and the majority's holding here there has been an evolution and growth in the prosecutive powers of the Attorney General that cannot be supported.

This appears to be the sequence in the development. The legislature gave the Attorney General authority, when the interests of the People of the State required it, to attend the trial of a person accused of crime and to assist in the prosecution. (Ill. Rev. Stat. 1973, ch. 14, par. 4.) Bills which would have enlarged the powers of the Attorney General were introduced in the General Assembly at its 1975 session. These proposals would have given the Attorney General authority to prosecute for offenses involving the collection of taxes and would have conferred all of the powers of the State's Attorneys in criminal proceedings. The General Assembly, however, rejected the bills. Manifestly the Attorney General in seeking this legislation recognized the limitations on his prosecutive authority and the necessity of legislative action to enlarge it. Next, the majority in *Massarella* held that the Attorney General has authority to "assist the State's Attorney to the extent that he may discharge all those powers of the State's Attorney at all stages in a prosecution *** where [the State's Attorney] does not object." (72 Ill. 2d 531, 538-39.) This is holding, it seems to me, that the passivity of the State's Attorney may remarkably enlarge the authority and power of the Attorney General to prosecute. The majority states here that the Attorney General has the power concurrently "with the power of the State's Attorney to initiate and prosecute all actions, suits, indictments and prosecutions." (78 Ill. 2d at 454.) This certainly goes far beyond the power to "attend the trial of any party accused of crime, and assist in the prosecution." Ill. Rev. Stat. 1973, ch. 14, par. 4.

The majority does acknowledge that unless a statute gives the Attorney General exclusive authority to institute and prosecute, as in Cigarette Tax Act cases, he does not

have the power to take exclusive charge of the prosecution. (78 Ill. 2d at 455.) It thus recognizes the statutory limitations on the Attorney General's power to prosecute and their effectiveness.

The majority does not say that this concurrent authority to prosecute is limited to revenue cases, and its holding may be interpreted to mean that the Attorney General, if the State's Attorney says nothing, will be able to exercise powers of prosecution in all criminal matters.

Accordingly, in cause No. 51768, I concur in the majority's affirmance of the dismissal of the indictments charging the defendants with theft. I dissent from the majority's reversal of the dismissal of the other charges in cause No. 51768 and from the reversal of the judgments in cause No. 58135.

MR. CHIEF JUSTICE GOLDENHERSH joins in this partial concurrence and partial dissent.