**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Robert C. JANNSEN, Defendant-**
**Appellant.**

**No. 14699.**

United States Court of Appeals
Seventh Circuit.

Dec. 30, 1964.

Rehearing Denied Jan. 27, 1965.

John F. Kelly, Daniel A. Taylor, Jr., Chicago, Ill., for defendant-appellant, Taylor & Kelly, Chicago, Ill., of counsel.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Asst. U. S. Attys., William O. Bittman, Asst. U. S. Atty., for plaintiff-appellee, Richard J. Phelan, Asst. U. S. Atty., of counsel.

Before HASTINGS, Chief Judge, CASTLE and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

Defendant Robert C. Jannsen was charged in a five-count indictment for willfully and knowingly attempting to evade his income tax for each of the years 1956 to 1960, both inclusive. The total amount of unreported income approximated $46,000. A jury found defendant guilty of the offenses charged and the district court sentenced him to a term of imprisonment. Defendant appeals from the judgment of conviction, relying on alleged errors claimed to have arisen from failure to grant his motion for judgment of acquittal, failure to grant a mistrial, giving of certain instructions, and rulings on evidence.

Since November 8, 1951, defendant has been the president of the Avalon Laundry Company. Avalon is primarily engaged in a general family laundry business with its plant located in Chicago. In addition to its regular work, Avalon also offered a dry cleaning service to its customers. Much of the actual dry cleaning, however, was performed by an independent dry cleaner, John Spomar, doing business as Normal Cleaners. In 1954, there was a renegotiation of the contract between Avalon and Normal. Having been authorized by Avalon to act in its behalf, defendant reached an understanding with Spomar that there would be a 50-50 per cent division of the receipts of the dry cleaning business taken in by Avalon, but performed by Normal. Defendant, however, requested Spomar to show a 63-37 per cent division (63 per cent for Normal and 37 per cent for Avalon) on the Normal invoices and to give him the excess 13 per cent in cash. The evidence showed that this procedure was followed until March, 1957, when defendant attempted to obtain an increased share of the profits for Avalon. When Spomar refused, defendant requested him to send the invoices to Avalon showing a 60-40 per cent division (60 per cent for Normal and 40 per cent for Avalon), thereafter giving defendant 10 per cent in cash. This procedure was followed until June, 1961.

The payments made by Spomar to defendant were in cash and given directly by Spomar to Jannsen. Defendant retained these payments for himself and did not surrender them to his company. On June 10, 1961, he confessed to the secretary-treasurer of the company that he had been receiving payments from Spomar. Subsequently, he returned substantially all of the money to Avalon. It is for failure to report as income these payments and interest earned thereon that the Government prosecuted defendant for evasion of income tax.

Defendant's motion for judgment of acquittal was based on the ground that the payments made to him by Spomar were embezzled funds and that, therefore, he need not have reported them as income. Defendant argues that because the taxable years in question were prior to the decision in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), that case must govern the instant situation. There the Supreme Court overruled Commissioner v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946), which held that embezzled money does not constitute taxable income to the embezzler under section 22 of the Internal Revenue Code of 1939 (now section 61(a) of the Internal Revenue Code of 1954). The Court in James held additionally, however, that "so long as the statute contained the gloss placed upon it by Wilcox at the time the alleged crime was committed," willfulness cannot be proven in a prosecution for failing to include embezzled funds in gross income. Accordingly, it becomes necessary for us to decide the exact nature of defendant's acquisition of the amounts he failed to report in his tax returns during the period from 1956 to 1961. If defendant's conduct amounted to an embezzlement, he contends that under the decision in Commissioner v. Wilcox, supra, he was not required to report the embezzled monies as income.

By general definition, embezzlement is the felonious conversion of property by a person to whom it has been entrusted and into whose lawful possession it has come prior to the conversion. Moore v. United States, 160 U.S. 268, 269–270, 16 S.Ct. 294, 40 L.Ed. 422 (1895); Tredwell v. United States, 266 F. 350, 352 (4th Cir.), cert. denied, 253 U.S. 496, 40 S.Ct. 587, 64 L.Ed. 1031 (1920). Moreover, the Illinois supreme court has on more than one occasion said that in order to constitute embezzlement under Illinois law the property must be in lawful possession of the accused and that there must be a subsequent felonious conversion of it. People v. Strong, 363 Ill. 602, 2 N.E.2d 942 (1936); People v. Streich, 361 Ill. 490, 198 N.E. 350 (1935).

We are convinced that defendant's conduct did not amount to an em-

bezzlement. The payments made by Spomar were not monies belonging to Avalon entrusted to defendant and coming into his possession lawfully. Rather, they were monies which came into his possession unlawfully by reason of his secret and fraudulent agreement with Spomar.

Defendant's reliance on Adame's Estate v. Commissioner, 320 F.2d 811 (5th Cir. 1963), is faulty. In that case, the school districts' trustees entrusted Adame, the county superintendent of schools, with public funds by giving him blank signed checks to pay for school expenses. The Fifth Circuit held that when Adame wrote checks to suppliers in excess of invoices, pocketing the difference, he committed an embezzlement. The checks were equivalent to money. In these circumstances the court held that Adame might reasonably have relied on Wilcox and thus did not willfully evade taxes by failing to include the embezzled funds in his gross income.

In the case at bar, Avalon directly paid Normal its purported share of the dry cleaning receipts, Spomar later making secret payments to Jannsen. At no time was defendant entrusted with the monies paid to Normal. Facts quite similar to these appear in Berra v. United States, 221 F.2d 590 (5th Cir. 1955), aff'd, 351 U.S. 131, 76 S.Ct. 685, 100 L. Ed. 1013 (1956). The court held there that there was no embezzlement by the defendant when he received secret and unwarranted payments from a contractor who had been paid by defendant's employer.

Defendant maintains that, if there was no error in denying his motion for judgment of acquittal, he is at least entitled to a new trial. He claims prejudicial error in the Government's attempt, with the apparent approval of the district judge, to bring before the jury Spomar's conviction for income tax evasion. Having called him as a government witness, the prosecution asked: "Is it a fact, Mr. Spomar, that you have been convicted of willful tax evasion?" Upon objection by defendant, the question was withdrawn before it was answered. Defendant contends that the mere asking of the question was sufficient to implant in the jury's mind the idea that since Spomar, one of the participants in the fraudulent scheme, was guilty of tax evasion, defendant himself must also be guilty.

■ There was no prejudicial error in asking the question. It is fundamental that a party calling a witness vouches for his credibility. Thus, in calling Spomar as its witness, the Government had the right to inform the jury from the outset of circumstances possibly affecting the witness' credibility so that any reference to them on cross-examination would not create the impression that either the witness or the prosecutor had something to hide. United States v. Freeman, 302 F.2d 347 (2d Cir. 1962). Furthermore, since the question was withdrawn before it was answered, there is little reason to believe that it could have prejudiced the defendant. Finally, there was no request made to instruct the jury to disregard the question. In such circumstances, defendant cannot now successfully claim that he was prejudiced.

■■ Defendant next contends that he was prejudiced by a newspaper account, that the article was seen by members of the jury, and that therefore he was denied a fair trial. The article, appearing on the morning of the day the case was submitted to the jury, referred to the defense of embezzlement as a "novel theory" and characterized the payments received by defendant as "kickbacks." After the district judge was informed of the article, he summoned the jurors one at a time to the jury box and questioned them individually. Although most of the jurors admitted that they had seen the article or knew of it, each stated that he had not read the article and was not prejudiced by it. Defendant argues that under the rule outlined by this court in United States v. Accardo, 298 F.2d 133 (7th Cir. 1962), each juror should have been examined out of the presence of the others rather than being questioned in the presence of those who had already testified. Accardo did not set down such a

rigid rule. In that decision we recognized that "each case must rest on its 'special facts'." Whereas the newspaper accounts in Accardo were prejudicial, the article in question here could hardly be said to be prejudicial as a matter of law. Moreover, in the instant case each juror specifically denied having read the account. Accordingly, precautions that might be required in interrogating jurors who had read a newspaper account alleged to be prejudicial need not have been taken in the circumstances present here.

Finally, defendant complains that the court erred in giving certain instructions and refusing to give others to the jury. We have considered these contentions and find them without merit. The instructions given were correct statements of the applicable law.

The judgment is affirmed.