UNITED STATES of America,
Plaintiff-Appellee,

v.

Frank LARGO and Joseph Tenuto,
Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

John REYNOLDS, Defendant-Appellant.

Nos. 14789, 14790.

United States Court of Appeals
Seventh Circuit.

May 10, 1965.

Rehearing Denied in No. 14789
June 21, 1965.

Rehearing Denied in No. 14789
June 21, 1965 (En Banc).

Swygert, Circuit Judge, dissented.

Frank Oliver, Doris A. Coonrod, Chicago, Ill., for appellants.

Edward V. Hanrahan, U. S. Atty., John Peter Lulinski, John Powers Crowley, Lawrence Jay Weiner, Assts. U. S. Attys., Chicago, Ill., for appellee.

Before KNOCH, SWYGERT and MAJOR, Circuit Judges.

KNOCH, Circuit Judge.

All three defendants-appellants, Frank Largo, Joseph Tenuto, and John Reynolds, were charged with violations of Title 18, U.S.C. §§ 472, 473 and 371, possession and transfers of counterfeit money and conspiracies to do the same. The jury found all three to be guilty. Frank Largo and John Reynolds were sentenced to serve ten years each and Joseph Tenuto to serve eight years.

The jury was selected and admonished by the Court with respect to newspaper accounts of the case. Trial was adjourned to the following day, March 12, 1964.

At the opening of Court on March 12, 1964, the defendants moved for mistrial on the basis of an article from the CHICAGO SUN-TIMES of that date.

The Trial Judge called the jurors into the courtroom one after the other and asked each whether he had seen any articles relating to the trial.

One juror said that she had read only a headline which she could no longer remember. Another said he had read an article in the CHICAGO'S AMERICAN. A third juror said that he had read only the first words of a CHICAGO SUN-TIMES article but had put it aside when he came across the Trial Judge's name. A fourth juror said he saw the headline and skipped it. All of these last three jurors denied that anything they had read would affect their impartiality as jurors. The rest of the jurors denied seeing any articles pertaining to the case.

The Trial Judge admonished all the jurors not to read newspaper articles relating to the trial. He denied the motion for mistrial.

At the afternoon session of the same day, the defendants again moved for mistrial on the basis of an article in the CHICAGO'S AMERICAN of the night before. This motion was also denied. The Court stated:

"Let the record show that the Court has read this article, that the Court did poll the jury, and the Court is of the opinion that as a result of the examination of the juror who read this article that he was not prejudiced and nothing to impair his impartiality."

The two articles in question read as follows:

"Chicago Sun-Times, Thurs.,
Mar. 12, 1964

"TAPED EVIDENCE OK'd IN COUNTERFEITING TRIAL

"A 45-minute tape recording of negotiations of three men charged with peddling counterfeit money was admitted as evidence in their trial Wednesday in U. S. District Court.

"Judge Edwin A. Robson heard the playback of a four-way conversation of a Secret Service agent and the three defendants Sept. 14 in room 729 of the Morrison Hotel and upheld its admissibility.

"The three men are charged with possessing and selling $29,000 in phony $10 bills.

"They are Joseph A. Tanuto, 42, of 2705 N. Hamlin, an ex-convict; Frank C. Largo, 48, of 125 E. Ridge, Gary, who was arrested last year as a keeper of a disorderly house, and John Reynolds, 43, of 3336 W. Beach, a machinist.

"Secret Service Agent James Griffith testified that he was in a room next to Room 729 recording the conversation by means of two hidden microphones.

"Another agent, Robert Motto, said he posed as a phony money passer and was in the room with the three men negotiating a deal to buy $100,000 worth of the counterfeit money.

"He said that the three arrived with $29,000 of the phony bills in an attache case and that he paid $4,500 in real money for it.

"Asst. U. S. Atty. Gen. James E. Bailey said the bills were the same as those found to have been circulating by ring of passers in seven states. The source of the counterfeit money has not been found, he said.

"Chicago's American, Wednesday, March 11, 1964

"U. S. TO USE TAPE IN COUNTERFEIT TRIAL

"A tape recording made by a secret service agent is to be used Wednesday in the trial of three men in a counterfeiting conspiracy.

"On trial before United States District Judge Edwin A. Robson are Joseph A. Tenuto, 42, of 2705 N. Hamlin av.; Frank C. Largo, 48, of 125 E. Ridge rd., Gary; and John Reynolds, 43, of 3336 Beach av.

"The three were seized by police and secret service agents last Oct. 13 after one of them sold a government agent 2,900 counterfeit $10 bills for

$4,350 at the corner of Monroe and Clark streets.

"The arrest occurred just one block from the United States courthouse, where the three are being tried.

"Not in Position

"James M. Bailey, assistant United States attorney, said the tape recording was made by Robert J. Motto, the secret service agent to whom the bogus money was sold.

" 'I'm not in a position to say now what is in the recording,' said Bailey. 'It might be of advantage to the opposition if I did. But it's really quite interesting.'

"Bailey said he did not anticipate any difficulty in entering the tape into evidence.

"The three men had passed about $12,000 during the six weeks they were under surveillance, according to Maurice G. Martineau, acting agent in charge of the Chicago secret service office.

"Identified the Three

"Martineau identified the three as 'kingpins' of the counterfeiting ring, which turned out what he described as 'excellent forgeries.' The only outstanding flaw was a light green tint to areas that should be white.

"Martineau's agents had tried to obtain $100,000 in bogus bills,"

---

At the close of the day the Trial Court again admonished the jury respecting news, radio or television reports.

Prior to retiring to consider their verdict, the jury were instructed as to the evidence which they might consider and were reminded that they must completely disregard press, radio, or television reports.

There was overwhelming proof of defendants' guilt. Secret Service Agent Robert Motto testified that he purchased a sample of counterfeit money from defendants Reynolds and Tenuto; that he arranged with defendants Tenuto and Largo to buy $100,000 in counterfeit money for $15,000 and $29,000 in counterfeit money for $4,300; and that defendant Reynolds delivered to Agent Motto, at the Morrison Hotel in Chicago, a satchel containing $29,000 in counterfeit money, in the presence of defendant Tenuto. All three defendants were arrested as they left the hotel. Other agents and police officers corroborated Agent Motto's testimony as to the various meetings he had with the defendants.

On recall, Agent Motto's testimony provided the foundation for offer and admission into evidence of a tape recording of a part of his conversations with defendants Tenuto and Largo.

On this appeal, the defendants contend that they:

" * * * were deprived of a fair trial because the jury was contaminated by prejudicial newspaper publicity, the trial judge further failing to take proper and necessary steps to vaccinate the jury against the effects of such contamination."

The defendants rely on Coppedge v. United States, 1959, 106 U.S.App.D.C. 275, 272 F.2d 504, 507; Marshall v. United States, 360 U.S. 310, 312–313, 79 S.Ct. 1171, 3 L.Ed.2d 1250 (1959); and United States v. Accardo, 7 Cir., 1962, 298 F.2d 133, 136, with particular emphasis on Accardo, where this Court said:

"He [the Court] should have, by the careful examination of each juror, out of the presence of the others, determined the effect of the articles on those who had read them and whether they had discussed the articles with others. [citing Coppedge] These individual interviews would have tended to overcome reluctance to speak out."

In the case before us the jurors were called into the courtroom one by one, but each was allowed to remain in the courtroom so that only the first juror called

was interviewed out of the presence of other jurors.

The jury were well aware that the tape recording contained the voices of defendants Tenuto and Largo but not that of defendant Reynolds as they themselves heard the tape. The Secret Service Agent who made the recording, the Assistant U. S. Attorney who tried the case and counsel for defendant Reynolds, all pointed out to the jury that Reynolds' voice was not on the tape. Incidentally, his presence and statements made by him were clearly established by the evidence of the Agents who heard him speak. The Assistant U. S. Attorney cited as a source of information in the newspaper articles denied in open court that he ever made any such statements.

The U. S. Supreme Court has held that the Constitutional guarantee is satisfied "if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961); Beck v. Washington, 369 U.S. 541, 557, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962). See also United States v. Jannsen, 7 Cir., 1964, 339 F.2d 916.

█ Each case must rest on its own special facts. On learning that a juror has read a news account relating to the case on trial, the Trial Judge must determine whether the nature and strength of any opinion formed by the juror is such as to raise a presumption of partiality. Reynolds v. United States, 98 U.S. 145, 156, 25 L.Ed. 244, 246 (1878).

█ We believe the better practice is to interview each juror singly out of the presence of all of the other jurors. If the evidence adduced at the trial here had presented a close issue of guilt or innocence, we might well have concluded that prejudicial error existed in this case. However, in the face of the overwhelming proof of the defendants' guilt, we find no justification for a new trial. The judgment of the District Court is affirmed.

Miss Doris A. Coonrod, of the Illinois bar, represented defendant John Reynolds in the District Court as Court-appointed counsel. She continued to represent him without compensation in this Court, filing a brief on his behalf which has been helpful to the Court and for which the Court is grateful.

Affirmed.

SWYGERT, Circuit Judge (dissenting).

On the second day of the trial defendants moved for a mistrial predicated upon certain newspaper articles appearing in the Chicago Sun-Times and the Chicago's American. The Sun-Times article, aside from narrating that the district judge had heard a playback of a tape recording and had upheld its admissibility, named the defendants and stated that Tenuto was an ex-convict and that Largo had been arrested the year before as a "keeper of a disorderly house." The article further related that a Secret Service agent said he posed as a "phony money passer" and was in a room with the defendants negotiating to buy $100,000 in counterfeit money.

The Chicago's American article also referred to the tape recording and then went on to relate that the defendants had passed $12,000 in counterfeit money during the six weeks they had been under surveillance by the Secret Service. An assistant United States Attorney was quoted concerning the tape recording. The article also reported that the agent in charge of the Chicago Secret Service office identified the defendants as "kingpins" of a counterfeit ring which turned out "excellent forgeries." The agent in charge did not testify at the trial.

When the matter was brought to the attention of the district court, the judge examined the jurors individually with regard to the articles. He asked substantially the same question of each juror: "It has been called to the court's attention that certain articles appeared in the press in the Chicago newspapers pertaining to this trial. You will recall my admonition of yesterday. I will ask if you

saw any of those articles that appeared in the press?" Juror Archer stated he had read the article in the Chicago's American. The judge then asked, "Was there anything about that article that might or could influence you so that you could not be a fair and impartial juror in this case?" The juror answered, "No sir."

The record indicates that the questioning of juror Archer took place while some of the other jurors were present. This, in itself, was a departure from the required procedure delineated in United States v. Accardo, 298 F.2d 133 (7th Cir. 1962). Moreover, the judge did not make a searching inquiry of this juror with regard to whether he might have been prejudiced by the article. United States v. Accardo, supra; Coppedge v. United States, 106 U.S.App.D.C. 275, 272 F.2d 504 (D.C. Cir. 1959). Rather, he merely asked the juror whether the article might or could influence him. In my opinion, this was not a sufficient inquiry under the circumstances. It was not the province of the juror to make the ultimate determination whether the article might or could have prejudiced him. The judge, after further questioning, should have made that final decision himself. If the juror had been removed from the presence of the other jurors and questioned further by the judge, it might well have developed that the juror would have admitted his inability to disregard the statements in the news report.

The fact that only one juror read the article is not determinative. Moreover, the judge did not ask the juror whether he had discussed the article with the other jurors. Speculation, which is legitimate in these circumstances, suggests the possibility that this juror discussed the article with his fellow jurors.

The Government contends that the article under consideration was not inflammatory or prejudicial and cites our recent decision in United States v. Jannsen, 339 F.2d 916 (7th Cir. 1964). Although the majority does not discuss the Jannsen decision, it should be pointed out that the circumstances there were significantly different from those present here. In the first place, none of the jurors in Jannsen said that he had read the allegedly offending newspaper article. Secondly, we held there that the article was not prejudicial. The record in that case shows that the newspaper account related what allegedly had taken place during the trial itself and discussed the evidence presented to the jurors. On the other hand, in the instant case the article included certain information which was not brought before the jury. Moreover, the fact that the statements were exposed to a juror by appearance in a newspaper article rather than by another form of extrajudicial communication is unimportant. If the Government's attorney or the agent had made the same statements as were contained in the newspaper article in the corridor of the courthouse and within the presence and hearing of juror Archer, it could hardly be said that the effect would have been less pernicious.

The majority says: "If the evidence adduced at the trial here had presented a close issue of guilt or innocence, we might well have concluded that prejudicial error existed in this case. However, in the face of the overwhelming proof of the defendants' guilt, we find no justification for a new trial." If I understand the majority correctly, this court is holding that the standard of a fair trial in a criminal case varies with the degree of guilt which we, as appellate judges, believe the evidence indicates. If the evidence of guilt seems overwhelming, the standard is not as exacting as when the evidence appears less conclusive. Such a variable standard, in my opinion, is antithetic to the very concept of due process. The sixth amendment's guaranty of fair trial requires that the same kind of trial be afforded every defendant—to those whose guilt appears doubtless as well as to those whose guilt appears less certain. The standard of fair procedure ought not depend upon whether a seemingly just verdict has resulted.

I would reverse and remand for a new trial.