Herman A. ROHDE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Herman A. and Alice ROHDE, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Nos. 65–C–8, 65–C–9.

United States District Court
E. D. Wisconsin.

Aug. 14, 1967.

Robert E. Nelson, Green Bay, Wis., for plaintiffs.

Mitchell Rogovin, Asst. Atty. Gen., Donald R. Anderson and Allen L. Schwait, Attys., Dept. of Justice, Washington, D. C., James B. Brennan, U. S. Atty., by Franklyn M. Gimbel, Asst. U. S. Atty., Milwaukee, Wis., for defendant.

## DECISION

GRUBB, Senior District Judge.

The actions for refund of payments of civil fraud penalties for the years 1957, 1958, and 1959, in the total amount of $1,369.31, were consolidated for purpose of trial. The cases are submitted for decision on the stipulation of the parties, the deposition of Herman A. Rohde taken on December 16, 1965, and, by agreement of the parties, on the record of the criminal trial in which plaintiff Herman A. Rohde was acquitted on the verdict of the jury, this court presiding, of charges of willful failure to attempt to evade payment of federal income taxes for the years 1957 and 1958. See Criminal Action No. 61–CR–111, United States v. Herman A. Rohde.

During the years in question Rohde was a cheesemaker employed at the Stoney Ridge Cheese Factory, an association of farmers (hereinafter called the "farmers"), with which he had been associated since 1951. In this capacity and pursuant to his agreement with the farmers, Rohde received milk from them, processed it into cheese, and sold it on their behalf in the best market he could find. Payment for the cheese and the by-product of whey was by check payable to the farmers.

The farmers owned the building of the cheese factory, but Rohde furnished and owned all equipment. He was compensated for his services at the rate of three and one-fourth cents per pound of cheese. In an earlier year, in 1952, Rohde's compensation also included one-half of the proceeds of the sale of sweet cream which is extracted from the milk prior to commencement of the cheese making process. Rohde received this payment from the farmers, not from the creamery which purchased the sweet cream.

The arrangement whereunder Rohde received one-half of the proceeds of sales of sweet cream was ended in August 1952 when the farmers' board of directors moved to pay him three and one-fourth cents per pound of cheese without any reference to the proceeds of sweet cream sales. In 1953, Rohde began to sell sweet cream to the Graf Creamery for cash instead of checks payable to the farmers and continued this practice at

least until 1959. Rohde preserved no records of the sweet cream transactions.

During the years in question Rohde included some of the income from cash sales of sweet cream on his federal income tax returns. In 1957, he reported $1,023.60 out of total receipts of $6,-932.00; in 1958, he reported $1,011.29 out of total receipts of $5,782.89; and in 1959, he reported $2,117.00 out of total receipts of $4,982.72. When questioned by a special agent of the Internal Revenue Service concerning the reporting of this income, Rohde admitted that he knew he should have put the entire amount of the cash sales on the returns, but stated that he did not do so because he did not want the farmers to know that the total receipts were as large as they were.

Although the farmers who testified on the criminal trial were not certain who would own the sweet cream proceeds during the years in question, they were not aware that Rohde was selling the sweet cream to the Graf Creamery and keeping the cash payments. After the trial, the farmers settled Rohde's liability to them for sweet cream money by having him pay off the balance on a $2,500 mortgage on the building, which he paid at the rate of $90 per month plus interest. He was given a raise in compensation and retained as a cheesemaker.

 The government's right to assessment of civil fraud penalties under Section 6653(b), 26 U.S.C.A., I.R.C. 1954,[1] depends on a showing of willfulness, that is, actual and deliberate wrongdoing with the specific intent to evade a tax believed to be owing. Failure to report or mere understatement of income is not, standing alone, sufficient to prove fraud, and the government carries the burden of proving fraud by clear and convincing evidence. Cefalu v. Commissioner of Internal Revenue, 276 F.2d 122, 128, 129 (5th Cir. 1960). The rule as to the burden of proof of fraud also prevails in suits for refund of the penalty. Sitnick v. United States, 367 F.2d 282, 284 (4th Cir. 1966); Bukowski v. United States, 136 F.Supp. 91, 95 (S.D.Tex. 1955). A jury verdict acquitting a taxpayer in a criminal case has no binding effect in a civil fraud proceeding because different standards of proof are involved. Lydon v. Commissioner of Internal Revenue, 351 F.2d 539, 545 (7th Cir. 1965).

During the years in question embezzled funds were deemed not to constitute taxable income under Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946). Wilcox was vitiated in Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952) by the holding that extorted funds were taxable income, and finally expressly overruled in James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). For civil non-fraud deficiency purposes, *James* has been interpreted as allowing retrospective application of its definition of taxable income as including embezzled funds. See Geiger's Estate v. Commissioner of Internal Revenue, 352 F.2d 221, 227 (8th Cir. 1965), cert. denied 382 U.S. 1012, 86 S.Ct. 620, 15 L.Ed.2d 527.

However, with respect to the underlying criminal conviction in *James,* the court held that "so long as the statute contained the gloss placed upon it by *Wilcox* at the time the alleged crime was committed," willfulness could not be proven where the prosecution was based on failure to include embezzled funds in gross income and ordered dismissal of the indictment rather than retrial on the question of intent. James v. United States, supra, 366 U.S. at 221–222, 81 S.Ct. 1052. See also United States v. Jannsen, 339 F.2d 916, 918 (7th Cir. 1965). A similar effect has been given the *James* holding with respect to proof of civil fraud in cases involving embezzled funds. Adame's Estate v. Com-

[1] "(b) *Fraud.*—If any part of any underpayment (as defined in subsection (c)) of tax required to be shown on a return is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. * * *"

missioner of Internal Revenue, 320 F.2d 811, 814 (5th Cir. 1963).

Thus, the threshold question in the case for refund of fraud penalties is whether or not the transaction giving rise to taxpayers' income from the sale of sweet cream constitutes an embezzlement of the monies. Under Section 943.-20(1) (b), Wisconsin Statutes,[2] the elements of embezzlement are the lawful possession of the property in question by virtue of the actor's office, business, or employment and the intentional use or retention of possession of such property without the owner's consent and with the intent to convert it to his own use. See also State v. Burke, 189 Wis. 641, 646, 207 N.W. 406 (1926). A general definition of embezzlement is provided in United States v. Jannsen, supra, 339 F.2d at 918, as follows:

" * * * (E)mbezzlement is the felonious conversion of property by a person to whom it has been entrusted and into whose lawful possession it has come prior to the conversion. (Citations of authority omitted)."

In *Jannsen*, the Court of Appeals for the Seventh Circuit determined that secret and unwarranted "kick-back" payments of dry cleaning receipts from a contractor who had been paid by defendant's employer did not constitute embezzlement because the payments had never been entrusted to or lawfully come into the possession of the defendant, who thus could not avail himself of the defense of retrospective immunization against the charge of criminal tax evasion under *James*. In the instant case, however, Rohde lawfully came into possession of the sweet cream, which was a component of the milk delivered to him by the farmers for the purpose of making cheese. By cash sales of the sweet cream he converted it to his own use since he was not entitled to retain the proceeds under his agreement with the farmers. Rohde's justification of his pocketing of the cash payments because he was otherwise underpaid cannot legitimize his appropriation of monies to which he was not entitled. Rohde's cash transaction with the Graf Creamery, his destruction of the records concerning sales of sweet cream and his failure to report the entire income were designed to keep the fact and extent of his misappropriation secret from his employers who had discharged a former cheesemaker for such conduct. The subsequent restitution exacted of Rohde confirms that the farmers did not believe that he was entitled to these funds on the basis of underpayment or by virtue of any ambiguity of the agreement.

■ The facts in this case show embezzlement of the income from the sales of sweet cream under general and under Wisconsin law. The fact that Rohde knew he should have reported the total of the receipts of income from sales of sweet cream but did not do so does not suffice to establish civil fraud since the test is not whether he relied on *Wilcox*, but whether he could reasonably have relied on its holding. Plaintiffs are entitled to refund of the fraud penalties imposed in respect to the years 1957, 1958, and 1959.

The foregoing opinion constitutes the court's findings of fact and conclusions of law in accordance with Rule 52, Federal Rules of Civil Procedure. Counsel for plaintiffs is hereby directed to prepare an order for entry of judgment for plaintiff Herman A. Rohde and against the United States in Civil Action No. 65–C–8, and for plaintiffs Herman A. Rohde and Alice Rohde and against the United States in Civil Action No. 65–C–9, and to submit the same to counsel for defendant for approval as to form and arithmetical computation only.

2. "(b) By virtue of his office, business or employment, or as trustee or bailee, having possession or custody of money or of a negotiable security, instrument, paper or other negotiable writing of another, intentionally uses, transfers, conceals, or retains possession of such money, security, instrument, paper or writing without the owner's consent, contrary to his authority, and with intent to convert to his own use * * *."