**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Victor Samuel KAMBER, Defendant-Appellant.**

**No. 18756.**

United States Court of Appeals,
Seventh Circuit.

Nov. 19, 1971.

Rehearing Denied March 27, 1972.

Certiorari Denied June 12, 1972.
See 92 S.Ct. 2434.

Clyde O. Bowles, Jr., William J. Martin, George J. Cotsirilos, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., Howard M. Hoffman, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel.

Before SWYGERT, Chief Judge, HASTINGS, Senior Circuit Judge, and KERNER, Circuit Judge.

SWYGERT, Chief Judge.

This is an appeal from a conviction following a jury verdict of guilty on the charge that defendant Kamber "willfully and knowingly was a party to the making of a false statement [to selective service] bearing upon his classification for service in the Armed Forces of the United States" in violation of 50 U.S.C. App. § 462(a).

Defendant registered in 1961 with his local board in Chicago. After being initially classified I–A in 1964, he obtained various deferments until June 20, 1968 when he was reclassified I–A. He appealed the reclassification which was affirmed by the appeals board on September 16, 1968. After receiving notification that the I–A classification had been affirmed, defendant called his local board to request a courtesy appearance in order to seek a II–A occupational deferment. On September 25, 1968 he received notification that he would be allowed a courtesy appearance at the October 8 meeting of the board.

On October 2 defendant mailed to his local draft board and to the Illinois State Director of Selective Service identical letters purporting to bear the signature of J. G. Handley, Chairman of the Division of Humanities at Prince George's Community College in Largo, Maryland, where defendant was employed as an assistant professor of speech. The letters were highly laudatory of defendant and spoke of him as being virtually irreplaceable. It is undisputed that defendant drafted the letters, had them typed on the college's letterhead stationery, had the signature notarized (by assuring a notary public who had not witnessed the affixing of the signatures that they were genuine) and personally mailed the letters.

The local board received the October 2 letter purportedly signed by Handley on October 4. On October 8 defendant appeared before the board for the courtesy appearance previously granted. The defendant was reclassified II–A on October 14, 1968. Then, on October 15, 1968, Handley wrote to the Illinois Headquarters of the Selective Service System in response to a letter from the headquarters advising him that his letter of

October 2 relating to defendant's request for deferment had been received. Handley reported that he had never before written to Illinois Selective Service. After investigation confirmed that the signature on the October 2 letters was not Handley's, this prosecution followed.

Defendant challenges the validity of his conviction on several grounds: the jury was prejudiced by publicity during the trial; the Government failed to prove beyond a reasonable doubt the essential elements of the crime charged; the proof varied fatally from the crime charged in the indictment; all or part of 50 U.S.C. App. § 462(a) is void for unconstitutional vagueness; and the Government's case included false evidence and improper cross-examination which denied defendant a fair trial. We affirm the conviction.

The factual basis for the claim of prejudicial publicity during the trial is as follows. On the day the trial began, defense counsel specifically declined to have the district judge caution the jury with regard to publicity. The following morning an article about the trial appeared in the Chicago Sun-Times under the headline, "Tricia escort tried for draft evasion here." The article, other than paraphrasing the essential allegations of the indictment, related only that defendant was active in the upper echelons of the Young Republicans, that he remained so active after his indictment and that he had escorted Tricia Nixon to one political affair and Julie Nixon to another in recent times. The trial court conducted a voir dire examination of each juror out of the presence of the others on the morning the article appeared to determine whether any had read it and, if so, whether any thought it had prejudiced them about the case. Eight of the jurors stated that they had read the article, and two of the remaining jurors had heard it discussed. However, no juror thought that the article had prejudiced him with regard to the case,

and several stated that they did not learn anything new from the article. Juror Langland was excused by the court on the basis of her answers at that voir dire, but the reason for excusing her was that she stated to the court that she was unsure of her impartiality because of deferment problems faced by her draft-eligible son.[1]

We agree with the district judge that the newspaper article was not prejudicial. We find it hard to believe that a petit jury would be prejudiced against a man on the basis of an article which said no more than what the instant piece did. Rather, we believe that this case is governed by United States v. Jannsen, 339 F.2d 916, 919–920 (7th Cir. 1964), where we also held that a challenged newspaper article could not be said to be prejudicial as a matter of law. Moreover, the judge here conducted the examination of the jurors after the appearance of the article in accordance with the practice we approved in United States v. Accardo, 298 F.2d 133 (7th Cir. 1962), of interrogating each juror out of the hearing of his fellows, even though the judge did not believe the article was prejudicial. Defendant was not deprived of due process by prejudicial publicity.

Defendant's contention that the proof was inadequate to convict is also erroneous. Viewing the evidence in the light most favorable to the Government, the evidence was clearly sufficient to warrant submission to the jury. Nor was this a case where a standard requiring less than proof beyond a reasonable doubt was applied, contrary to the assertion of defendant, so that In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), has no application here.

Defendant also argues that the proof varied fatally from the charge contained in the indictment. This contention is based upon the theory that the term "false statement" as used in 50

---

1. The trial continued with a jury of eleven in accordance with a stipulation entered into by the parties. The issue of prej-udicial publicity was not waived thereby, however.

U.S.C. App. § 462(a) refers only to a statement conveying false information about a registrant and does not refer to a statement which, although forged, contains truthful information. We do not believe such a hairsplitting distinction is justified, nor have we found any authority for it. To forge a document is to produce a false imitation, a counterfeit of it. By the same token, to make a false statement is to make a statement which contains materially false information or which falsely identifies the source of the information. Therefore, even if we assume that defendant proved that every other material fact contained in the October 2 letter was a truthful statement except its identification of Handley as its author, that letter would still be a prohibited false statement within the intendment of the statute.

■ Defendant further contends that the Government failed to prove that the letter of October 2 "bore upon" his draft classification. In so doing he urges that we adopt the myopic view that the filing of a false statement with a draft board may not be prosecuted as a crime unless the statement is, in effect, a proximate cause of an improper classification. However, defendant ignores the language of the statute in the presentation of this argument, for the statute punishes "any person who shall knowingly make, or be a party to the making, of any false statement or certificate *regarding or bearing upon* a classification." 50 U.S.C. App. § 462(a) [emphasis added]. The juxtaposition of "regarding" with "bearing upon" makes very clear that the legislative intent of the Congress was not to require a showing of proximate cause as an element of the crime of being a party to the filing of a false statement with selective service officials. Indeed, such a strained *construction would do grave disservice to the obvious legislative purpose behind the statute*—ensuring that draft boards could depend on the veracity of statements submitted to them by providing criminal sanctions for falsification. If the selective service system were to have to bear the heavy burden of proving beyond a reasonable doubt that a particular statement was determinative of the votes of a majority of a local board, then the legislative purpose—which makes possible the operation of a largely self-executing system of conscription—could easily be frustrated.

■ Defendant argues that 50 U.S.C. App. § 462(a) is violative of the due process clause of the fifth amendment as being so vague as to warn insufficiently of what it is that it prohibits, thereby seeking to invoke the rule of Lanzetta v. New Jersey, 306 U.S. 451, 59 S.Ct. 618, 83 L.Ed. 888 (1939) and Connally v. General Constr. Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926), that statutes suffering from such vagueness are void. In so doing, defendant urges that the prohibition against knowingly being "a party to the making * * of a false statement * * * bearing upon a classification * * *" is the locus of the fatal vagueness. We fail to see how the prohibition is vague. The term "parties" has a settled meaning in the law as denoting those "who take part in the performance of any act." Black's Law Dictionary 1275 (4th ed. 1951); 2 Bouvier's Law Dictionary 2460 (8th ed. 1914). Thus, the statute quite clearly prohibits knowing participation in the making of a false statement bearing upon a draft classification and cannot be said to be void for vagueness.

■ Finally, defendant contends that the Government submitted evidence to the trial court known to the prosecutor to be false. The basis for this allegation is that Agent Sullivan of the F.B.I. testified that in an interview on February 5, 1969 defendant stated that Handley had refused a request for a letter similar to the October 2 forgery, while the statement of Handley taken by Agent Cronin on November 4, 1969 was to the effect that defendant had never requested such a letter. Defendant conceded that the report of the Handley interview was given to his counsel prior to Handley's testimony and the report of the defendant's interview was given to

counsel prior to Agent Sullivan's testimony. That is more than is required by 18 U.S.C. § 3500 and more than enough of an opportunity for defendant to call Handley in rebuttal. Moreover, the defense waived cross-examination of Handley. We hold, therefore, that, if there was any error in the admission of Sullivan's testimony, it was not preserved by the defendant. Defendant also objects to the form of the Government's cross-examination of defendant and the witness Imle. While some of the questioning was arguably improper, we find that such error as there may have been in this regard was harmless.

The judgment of the district court is affirmed.