(No. 39330.—

The Department of Revenue, Appellee, *vs.* National Bellas Hess, Inc., Appellant.

*Opinion filed Jan. 25, 1966.—Rehearing denied March 23, 1966.*

LEIBMAN, WILLIAMS, BENNETT AND BAIRD, of Chicago, (JULIAN R. WILHEIM, of counsel,) for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, (RICHARD A. MICHAEL and TERENCE F. MACCARTHY, Assistant Attorneys General, of counsel,) for appellee.

HALFPENNY, HAHN AND RYAN, of Chicago, (HAROLD T. HALFPENNY, JAMES F. FLANAGAN, and MARY M. SHAW, of counsel,) *amicus curiae.*

Mr. JUSTICE HOUSE delivered the opinion of the court:

Defendant National Bellas Hess, Incorporated, a non-resident mail-order vendor, appeals from a summary judgment entered by the circuit court of Cook County against it for the sum of $93,242.18, representing taxes of $74,593.75 assessed under the Illinois Use Tax Act, (Ill. Rev. Stat. 1961, chap. 120, pars. 439.1 *et seq.,*) for the

period of July 17, 1961, through October 31, 1962, plus a 25% penalty of $18,648.43. Constitutional questions, as well as the public revenue, are involved.

There is no dispute about the following facts which are gathered from the pleadings. Defendant is a national mail order company. It issues annually two main catalogues, described as "Spring and Summer" and "Fall and Winter," and it also issues during the year a number of intermediate smaller "sales books" or "flyers." The catalogue contains approximately 4000 different items of merchandise for retail sale, and it is mailed to the company's own list of customers. This list, which contained 5,000,000 names when the company acquired it in 1932, is kept current with active and recent customers. The "flyers," which are less costly to distribute, are mailed to a less restricted list of customers or potential customers. They are occasionally mailed in bulk addressed to "occupant" or enclosed in the parcels sent to customers in filling orders from a prior "flyer" or catalogue.

The company's only plant is located in North Kansas City, Missouri, and all of its mail-order activities occur there, except for purchasing, which is done initially by a wholly owned subsidiary in New York. All of the catalogues and "flyers" are mailed from North Kansas City; orders from customers are received and accepted there; the goods are mailed or shipped by common carrier from there; and payment by the customer is mailed there.

The company is a Delaware corporation and is qualified to do business only in Delaware and Missouri. It does not maintain in Illinois any office, distribution house, sales house, warehouse or any other place of business; it does not have in Illinois any agent, salesman, canvasser, solicitor or other type of representative to sell or take orders, to deliver merchandise, to accept payments, or to service merchandise it sells; it does not own any tangible property, real or personal, in Illinois; it has no telephone listing in Illinois and it has not advertised its merchandise for sale

in newspapers, on billboards, or by radio or television in Illinois.

Section 3 of the Use Tax Act, which became effective in July, 1955, imposes a tax "upon the privilege of using in this State tangible personal property purchased at retail * * * from a retailer." It also provides that the tax "* * * shall be collected from the purchaser by a retailer maintaining a place of business in this State * * *." (Ill. Rev. Stat. 1961, chap. 120, par. 439.3.) The constitutionality of the act was adjudicated and a determination of its operating incidence was made by this court two years later. (*Turner* v. *Wright*, 11 Ill.2d 161.) Section 2 of the act, which defines various terms used in the act, was amended effective July 17, 1961, (the commencement date of the assessment here in question) by adding a new paragraph to the definition of a "retailer maintaining a place of business in this State." The new paragraph, referred to as the "catalogue amendment", defines a "retailer maintaining a place of business in this State" as any retailer "Engaging in soliciting orders within this State from users by means of catalogues or other advertising, whether such orders are received or accepted within or without this State." Ill. Rev. Stat. 1963, chap. 120, par. 439.2.

The Use Tax Act was also amended in July, 1961, by adding a new section, section 12a, which provides for substituted service of process on a nonresident falling within the definition of "retailer maintaining a place of business in this State." It provides that, "Any non-resident of this State who accepts the privilege extended by the laws of this State to non-residents of acting as a retailer maintaining a place of business in the State within the meaning of Section 2 of this Act, * * * shall be deemed thereby to appoint the Secretary of State of Illinois his agent for the service of process or notice in any judicial or administrative proceeding under this Act. Such process or notice shall be served by the Department on the Secretary of

State by leaving, at the office of the Secretary of State at least 15 days before the return day of such process or notice, a true and certified copy thereof, and by sending to the taxpayer by registered or certified mail, postage prepaid, a like and true certified copy, with an endorsement thereon of the service upon said Secretary of State, addressed to such taxpayer at his last known address." (Ill. Rev. Stat. 1961, chap. 120, par. 439.12a.) The section provides that this substituted service of process or notice "shall be of the same force and validity as if served upon the taxpayer personally within this State."

While defendant has raised a number of grounds for reversing the judgment entered against it, its two principle arguments are: (1) that the exercise of *in personam* jurisdiction by the circuit court in this proceeding constitutes a denial of due process of law under the Federal and Illinois constitutions, (U.S. Const., Amend. XIV, sec. 1; Ill. Const. art. II, sec. 2,) and (2) that the Use Tax Act in so far as it requires that defendant collect the use tax from Illinois taxpayers is a denial of due process of law under the Federal and Illinois constitutions and violative of the commerce clause of the Federal constitution. (U.S. Const., art. I, sec. 8, cl. 3.) We consider first the constitutionality of requiring defendant to collect the Illinois use tax.

The Supreme Court has held that a State's power to impose upon a nonresident vendor the burden of collecting its use tax depends upon the amount of activities conducted by the nonresident vendor in the taxing State. (*American Oil Company* v. *Neill*, 380 U.S. 451, 14 L. ed. 2d 1, 85 S. Ct. 1130; *Scripto Inc.* v. *Carson*, 362 U.S. 207, 4 L. ed. 2d 660, 80 S. Ct. 619; *Miller Bros. Co.* v. *State of Maryland*, 347 U.S. 340, 98 L. ed. 744, 74 S. Ct. 535; *General Trading Co.* v. *State Tax Commission*, 322 U.S. 335, 88 L. ed. 1309, 64 S. Ct. 1028.) "There must be * * * 'some definite link, some minimum connection, between a state and the person, property or transaction it seeks to

tax.' " *Scripto Inc.* v. *Carson,* 362 U.S. 207, 210-211, 4 L. ed. 2d 660, 80 S. Ct. 619, 621.

*Nelson* v. *Sears Roebuck & Co.* 312 U.S. 359, 85 L. ed. 888, 61 S. Ct. 586, involved the constitutionality of the Iowa use tax as applied to Sears mail order business conducted directly between customers in Iowa and Sears mail-order houses located outside Iowa. Sears was authorized to do business in Iowa and had retail stores there. The court upheld Iowa's power to impose this collector's liability against Sears on such mail orders against the attack that the exercise of such power denied Sears of due process of law under the fourteenth amendment and violated the commerce clause of section 8 of article I of the constitution.

*Nelson* v. *Montgomery Ward,* 312 U.S. 373, 85 L. ed. 897, 61 S. Ct. 593, a companion case to *Sears Roebuck,* raised the identical issue on almost the same facts as in *Sears Roebuck* and the court reached the same result. In the course of this opinion, however, the court stated: "There is a further fact in this record which makes a reversal of this judgment necessary. It was stipulated that 'advertisements have been caused to be printed by the retail stores of the petitioner [Montgomery Ward & Co.] in the State of Iowa, advertising not only retail merchandise, but the ability to complete service through the use of the catalog.' *This stipulation clearly means that respondent has solicited mail order sales in Iowa.* [Emphasis added.] The fact that that solicitation was done through local advertisements rather than directly by local agents \* \* \* is immaterial. Nor is it material that the orders were filled by direct shipments from points outside the state to purchasers within the state." 312 U.S. 373, 376, 85 L. ed. 897, 899, 61 S. Ct. 593, 595.

The same issue was again raised in *General Trading Co.* v. *State Tax Commission,* 322 U.S. 335, 88 L. ed. 1309, 64 S. Ct. 1028. That case also involved the Iowa use tax, but this time the vendor had never qualified to do business as a

foreign corporation in Iowa nor did it maintain any office, branch or warehouse there. Orders were solicited by traveling salesmen sent into Iowa from their Minnesota headquarters. Again, the court upheld Iowa's jurisdiction to impose liability on the nonresident vendor for collection of the use tax on property shipped by common carrier or the post into Iowa.

The question was again raised in *Miller Bros. Co.* v. *State of Maryland,* 347 U.S. 340, 98 L. ed. 744, 74 S. Ct. 535. Miller Bros. Co. only made sales directly to its customers in Wilmington, Delaware, and did not take orders by mail or telephone. Maryland's Court of Appeals held Miller Bros. Co. liable for the Maryland use tax on all goods sold in the Delaware store to Maryland residents whether the goods were delivered into Maryland by common carrier, the vendor's truck or carried by the purchasers themselves. The U.S. Supreme Court held that advertising by Miller Bros. Co. with Delaware newspapers and radio stations which reached Maryland residents, its occasional sales circulars which were mailed to all former customers including customers in Maryland, and the occasional delivery of goods into Maryland did not constitute a jurisdictional basis for imposing the burden of collecting or paying the Maryland use tax on this Delaware vendor. In distinguishing the *General Trading* case the court said, "That was the case of an out-of-state merchant entering the taxing state through traveling sales agents to conduct continuous local solicitation followed by delivery of ordered goods to the customers * * *. But there is a wide gulf between this type of active and aggressive operation within a taxing state and the occasional delivery of goods sold at an out-of-state store with no solicitation other than the incidental effects of general advertising." 347 U.S. 340, 346-347, 98 L. ed. 744, 749, 74 S. Ct. 535, 540.

The issue again came before the court in *Scripto, Inc.* v. *Carson,* 362 U.S. 207, 4 L. ed. 2d 660, 80 S. Ct. 619. The

court held that solicitation by advertising specialty brokers who were not employees or agents of Scripto, the Georgia vendor, constituted a jurisdictional basis for imposing the burden of collecting or paying the Florida use tax on orders solicited by the brokers and filled by shipping the merchandise into Florida. After stating that the case was controlled by *General Trading Co.* the court distinguished the *Miller Bros. Co.* case by saying: "Miller had no solicitors in Maryland; there was no 'exploitation of the consumer market'; no regular, systematic displaying of its products by catalogs, samples or the like. But, on the contrary, the goods on which Maryland sought to force Miller to collect its tax were sold to residents of Maryland when personally present at Miller's store in Delaware. \* \* \* Marylanders went to Delaware to make purchases—Miller did not go to Maryland for sales. Moreover, it was impossible for Miller to determine that goods sold for cash to a customer over the counter at its store in Delaware were to be used and enjoyed in Maryland." 362 U.S. 207, 212, 4 L. ed. 2d 660, 664, 665, 80 S. Ct. 619.

From the foregoing cases it would appear that Mr. Justice Rutledge has gotten to the heart of the "what" and "why" that constitutes a jurisdictional basis for imposing on a nonresident vendor the burden of collecting the use tax on merchandise sold and delivered to residents of the taxing State. He said: "The old notion that 'mere solicitation' is not 'doing business' when it is regular, continuous and persistent is fast losing its force. In the *General Trading Co.* case it loses force altogether, for the Iowa statute defines this process in terms as 'a retailer maintaining a place of business in this state.' The Iowa Supreme Court sustains the definition and this Court gives effect to its decision in upholding the tax. Fiction the definition may be; but it is fiction with substance because, for every relevant constitutional consideration affecting taxation of transactions, regular, continuous, persistent solicitation has the

same economic, and should have the same legal, consequences as does maintaining an office for soliciting and even contracting purposes or maintaining a place of business, where the goods actually are shipped into the state from without for delivery to the particular buyer." (Separate opinion concurring with *General Trading Company* v. *State Tax Commission* and *International Harvester Co.* v. *Department of Treasury,* 322 U.S. 340, 349, 88 L. ed. 1313, 1319, and dissenting to *McLeod* v. *J. E. Dilworth Co.* 322 U.S. 327, 349, 354, 88 L. ed. 1304, 1319, 1321.) In short, "continuous local solicitation followed by delivery of ordered goods to the customers" apparently forms a constitutional basis for a "State's decision to regard such a rivalry with its local merchants as equivalent to being a local merchant." *Miller Bros. Co.* v. *State of Maryland,* 347 U.S. 340, 346, 98 L. ed. 744, 749, 74 S. Ct. 535, 540.

We do not think it important that defendant in this case solicits orders by catalogue and flyers rather than by local advertising as in *Montgomery Ward,* or by salesmen as in *General Trading Co.* or by brokers as in *Scripto, Inc.* The important question is whether there is "exploitation of the consumer market" by continuous solicitation and not whether the company used local advertising, salesmen, brokers or catalogues since the vendor will use that type of solicitation which most effectively and economically exploits the consumer market.

We believe the record in this case shows that defendant has engaged in "soliciting orders within this State from users by means of catalogues and other advertising" and that it is, therefore, a "retailer maintaining a place of business in this State" under the Use Tax Act. Since the record also supports the conclusion that there was continuous local solicitation of mail orders followed by delivery of the ordered goods to customers in Illinois, we hold that the Use Tax Act does not deprive defendant of due process of law

under the Federal or Illinois constitutions nor does it violate the commerce clause of the Federal constitution.

Defendant argues that the issue here is whether Illinois can impose its use tax on it and that this "issue cannot be obfuscated by gratuitous and euphemistic statements that Illinois is attempting to impose upon defendant only the duty of such tax collection." Section 3 of the Use Tax Act provides that the tax imposed on the purchaser-user is to be collected by the retailer. Section 8 provides that "the tax herein required to be collected by any retailer pursuant to this Act, and any such tax collected by any retailer shall constitute a debt owed by the retailer to this State * * *." The effect of these two sections is that the tax is to be collected by the retailer; but if he fails to collect the tax, he himself is liable for its payment. The Florida statute under consideration in the *Scripto, Inc.,* case also imposed on the vendor the burden of collecting or paying the use tax. The court stated, "We note that the appellant is charged with no tax—save when, as here, he fails or refuses to collect it from the Florida customer," and went on to affirm the tax liability levied against Scripto, Inc. 362 U.S. at 211.

Defendant's other principle contention for reversing this judgment is that the exercise of *in personam* jurisdiction by the circuit court deprived it of due process of law. Defendant states that in none of the cases dealing with a State use tax and the imposition of collection liability has the issue been raised of whether substituted service of process on a nonresident vendor will give a court jurisdiction to enter an *in personam* judgment.

Thomas Reed Powell raised this issue in "Sales and Use Taxes: Collection from Absentee Vendors." (57 Harv. L. Rev. 1086 (1944).) He analyzed the problem of obtaining personal service on a nonresident vendor who does all his business by mail order or whose soliciting agents have left the State ahead of the process server and concluded that,

"Such practical difficulties cannot as yet be minimized by applying to all foreign corporations engaged exclusively in interstate commerce the familiar statutes requiring the appointment of an agent or providing that the doing of business shall itself be a sufficient basis for service of process on a state official in causes of action arising out of business there done." (57 Harv. L. Rev. 1086, 1088.) This conclusion was apparently correct when written, but we note that it was written a year before the land mark case of *International Shoe Co.* v. *Washington,* 326 U.S. 310, 90 L. ed. 95, 66 S. Ct. 154.

In *Gray* v. *American Radiator and Standard Sanitary Corp.* 22 Ill.2d 432, we stated, "Under modern doctrine the power of a State court to enter a binding judgment against one not served with process within the State depends upon two questions: first, whether he has certain minimum contacts with the State [citation], and second, whether there has been a reasonable method of notification." (22 Ill.2d 432, 437). We consider first the question of minimum contacts with the State.

In the use tax cases heretofore considered the court speaks of the State's "jurisdiction or power to create this collector's liability," (See, *e.g., Miller Bros· Co.* v. *State of Maryland,* 347 U.S. 340, 344, 98 L. ed. 744, 748, 74 S. Ct. 535, 538,) and turns the question of such jurisdiction or power on whether the nonresident vendor has "minimum connections" with the taxing State. (*Miller Bros. Co.* v. *State of Maryland,* 347 U.S. 340, 345, 98 L. ed. 744, 748, 74 S. Ct. 535, 539.) Thus, the power to render an *in personam* judgment against one not served with process within the State and the power to impose a collector's liability for the use tax on a nonresident vendor both depend on "minimum contacts" or "minimum connections" with the State. Whether the "minimum connections" which form the basis of jurisdiction to impose the collector's liability are sufficient to form the basis of *in personam* jurisdiction to enforce this

liability has not, to our knowledge, been decided by the Supreme Court. It would be an anomolous situation, however, if a State had jurisdiction to impose this collector's liability but did not have jurisdiction to enforce it.

*McGee* v. *International Life Insurance Co.* 355 U.S. 220, 2 L. ed. 2d 223, 78 S. Ct. 199, involved an action brought in California against a foreign insurance company on a policy issued to a resident of California. The insurance company did not have any office or agent in California and never solicited or did any insurance business in California apart from the policy involved in the case. The insurance company was not served with process in California, but was notified by registered mail at its place of business in Texas, pursuant to a statute permitting such service in actions on insurance contracts. After referring to the *International Shoe* case and the trend "toward expanding the permissible scope of state jurisdiction over foreign corporations," the court held that "it is sufficient for purposes of due process that the suit was based on a contract which had substantial connection" with California. 355 U.S. 220, 223, 2 L. ed. 2d 223, 226, 78 S. Ct. 199, 201.

*Hanson* v. *Denckla*, 357 U.S. 235, 2 L. ed. 2d 1283, 78 S. Ct. 1228, concerned the right to $400,000, part of the corpus of a trust established in Delaware by a settlor who later became domiciled in Florida. Delaware refused to accord full faith and credit to a Florida decree adjudicating the matter because the Florida court had not acquired jurisdiction over an indispensable party, the Delaware trustee. The trustee was not served with process in Florida, but was notified by ordinary mail and notice was published locally as required by the Florida statutes dealing with constructive service.

The court first noted that "the requirements for personal jurisdiction over non-residents have evolved from the rigid rule of *Pennoyer* v. *Neff*, 95 U.S. 714, 24 L. ed. 565 to the flexible standard of *International Shoe Co.* v. *State of*

*Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154." It then stated, "But it is a mistake to assume that this trend heralds the eventual demise of all restrictions on the personal jurisdiction of state courts. \* \* \* a defendant may not be called upon to do so [defend himself in a foreign tribunal] unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." The court proceeded to distinguish the "minimal contacts" present in the *McGee* case from the absence of "minimal contacts" in this *Hanson* case. "None of the trust assets has ever been held or administered in Florida, and the record discloses *no solicitation of business in that State either in person or by mail.* \* \* \* In *McGee,* the nonresident defendant *solicited* a reinsurance agreement with a resident of California. \* \* \* But the record discloses no instance in which the *trustee* performed any acts in Florida that bear the same relationship to the [trust] agreement as the *solicitation* in *McGee."* (Emphasis added.) 357 U.S. 234, 251-252, 2 L. ed. 2d 1283, 1296, 78 S. Ct. 1228, 1238-1239.

Thus, solicitation which is of prime importance in satisfying the "minimal connections" requirement in the use tax cases is of equal importance in satisfying the "minimal contacts" requirement necessary for the exercise of *in personam* jurisdiction with substituted service of process. Also significant is the fact that the solicitation, which was so important in the *McGee* case, was by mail. (See also, *Travelers Health Ass'n* v. *Virginia,* 339 U.S. 643, 94 L. ed. 1154, 70 S. Ct. 927.) We hold that defendant's continuous local solicitation for mail orders followed by delivery of the ordered goods to customers in Illinois constitute the "minimal contacts" between defendant and Illinois that are requisite to the exercise of *in personam* jurisdiction over it.

This brings us to the question of whether section 12a provides a reasonable method of notification. The section states that a true and certified copy of the process or notice

shall be sent to the taxpayer by registered or certified mail at his last known address. In the *International Shoe Co.* case the court said, "Nor can we say that the mailing of the notice of suit to appellant by registered mail at its home office was not reasonably calculated to apprise appellant of the suit." (326 U.S. 310, 320, 90 L. ed. 95, 104, 66 S. Ct. 154, 160.) We are of the opinion that section 12a gives the person to be served or notified "a realistic opportunity to appear and be heard." See *Gray* v. *American Radiator and Standard Sanitary Corp.* 22 Ill.2d 432, 436.

The record shows that on January 21, 1963, a certified copy of the notice of proposed assessment was sent by registered mail addressed to defendant's North Kansas City office. On June 26, 1963, a certified copy of final assessment was sent by registered mail addressed to defendant's North Kansas City office and on January 23, 1964, a certified copy of *alias* summons, with a copy of the complaint attached, was sent by registered mail to defendant's North Kansas City office. Defendant did not respond to the notice of proposed assessment or final assessment, but it did make a special appearance to contest the jurisdiction of the circuit court. There is nothing in the record to show that defendant did not have adequate notice or sufficient time to prepare its defenses and appear.

Defendant also argues that section 12a does not apply to it. To support this argument it first points out that the section states, "Any non-resident of this State who accepts the privilege extended by the laws of this State to non-residents of acting as a retailer maintaining a place of business in this State * * *." Defendant then contends that it receives no privilege from Illinois.

The plain intent and meaning of section 12a is to provide a method of substituted service on a nonresident "acting as a retailer maintaining a place of business in this State within the meaning of Section 2." Whether Illinois extended the "privilege" or defendant accepted the "privi-

lege" is academic, because, as we have pointd out, defendant is "maintaining a place of business in this State within the meaning of Section 2" and the application of 12a to defendant did not deprive it of due process of law.

Also in support of its argument that section 12a is not applicable to it, defendant points out that the section provides for mailing a copy of the notice or process "to the taxpayer * * * addressed to such taxpayer at his last known address." Since defendant is a collector of the tax rather than a "taxpayer" it concludes that the section does not apply to it.

As we just pointed out, section 12a provides a method of substituted service on persons who have incurred a liability under the Use Tax Act. The section clearly provides in the first sentence that it is to apply to (1) nonresident vendors, (2) resident vendors who subsequently move from the State or conceal their whereabouts and (3) resident or nonresident users who move from the State or conceal their whereabouts. The section thereafter uses the word "taxpayer" in a generic, and not in a technical, manner to cover all three categories of persons who may have incurred liability under the act and cannot be served with process in the State. The section clearly applies to defendant.

The constitutional issues argued by *amici curiae* are essentially the same as those argued by defendant. They do contend, however, that equal treatment has not been accorded resident and nonresident vendors with regard to their respective liabilities under the Retailers' Occupation Tax Act and the Use Tax Act on credit sales. Since there is nothing in the record concerning credit sales, we need not consider this question. Nor will we consider a memorandum of the Department of Revenue concerning sales for resale and its effect on manufacturers and wholesalers, since there are no sales for resale involved in this case.

The remaining questions raised by defendant can be disposed of summarily. Defendant argues that the complaint

should have been dismissed because the verification was not personally signed by Harry L. Hulman, Director of the Department of Revenue. Verification of the complaint was not necessary. (Ill. Rev. Stat. 1961, chap. 110, par. 35.) It also argues that the trial court erred in entering a summary judgment because there were genuine issues of material fact raised by the pleadings. Defendant does not state what those issues are and our examination of the pleadings does not reveal any such issues. It is also argued that summary judgment should not have been entered because two affidavits of Director Hulman were not personally signed by him and the affidavit of Attorney General William G. Clark consists only of argument and conclusions of law. As we just mentioned, the pleadings do not show any genuine issues of material fact.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*